866 P.2d 1330

The ESTATE OF Ruben A. HERNANDEZ, by Elizabeth L. HERNANDEZ–WHEELER, his personal representative, for and on behalf of Ruben R. Hernandez, Elizabeth L. Hernandez–Wheeler and Catherine Rose Poli, Plaintiffs/Appellants,

v.

ARIZONA BOARD OF REGENTS, a body corporate, Delta Tau Delta Fraternity, a New York corporation, Epsilon Epsilon Chapter of Delta Tau Delta Fraternity, Inc., an Arizona corporation, Epsilon Epsilon Educational Foundation, an Arizona corporation, Brett Harper Anderson, Bradley Reed Bergamo, Paul Jude Biondolillo, Joshua Christopher Bliss, Matthew James Bosco, Steven Penn Bryan, Anthony Charles P. Caputo, Thomas David Carlson, Stephen Michael Carpenter, Jeffrey David Catlin, Nathaniel Louis Derby, Albert Edward Dietrich IV, Clo Earl Edgington, Karam Elias Farah, Christopher Todd Flavio, Gerritt Andrew Gehan, Barry James Ginch, Steven Hare, David James Henshall, Markus Rudolph Holtby, Mark Thomas Hopkins, David Laurence Ison, Douglas Edward Jameson, Gregory Richard Janis, Rex Edward Jorgensen, Jay Adam Josephs, Craig Landon, Sean David Leahy, Dale R. Lemon, John Christopher Manross, John Conrad Miller, Christopher J. Molloy, Harrison Lane Morton, Kurt Richard Munzinger, Paige Ray Peterson, Kenneth S. Plache, Daniel Lee Rasmus, Scott Allen Remington, Paul Anthony Reynolds, James Samuel Rigberg, Gary Edward Rink, Erick Jon Roberts, Michael Daniel Roth, George Evangelos Roussos, Charles Dana Sacks, Thomas McKinlay Schwarze, William John Sheoris, Douglas Todd Sims, Clifford Lawrence Smith, Kristopher James Stathakis, Roger Sanford Stinnett, Douglas Matthew Stoss, Anthony Charles Suriano, Eric Joseph

Szoke, Nelson Sterlin Udstuen, James Frank Uppendahl, Scott Urban, Larry Wagner, Todd Eric Wallis, Jonathan Blakeslee Woodard, Michael Patrick Woodward, Jeffrey Ryan Wyne, and David Hall ·Yohe, Defendants/Appellees.

No. CV–92–0079–PR.

Supreme Court of Arizona,
En Banc.

Jan. 13, 1994.

Reconsideration Denied March 3, 1994.

Risner & Graham by Kenneth K. Graham, William J. Risner, Tucson, for plaintiffs/appellants.

Grant Woods, Atty. Gen. of Arizona by Bruce G. McDonald, Nancy M. Coomer, Tucson, for defendants/appellees Arizona Board of Regents, Steven Hare.

Fish, Duffield, Miller, Young, Adamson & Alfred, P.C. by Samuel D. Alfred, Tucson, for defendant/appellee Delta Tau Delta Fraternity.

Murphy, Goering, Roberts & Berkman by Michael F. McNamara, William L. Rubin, Tucson, for defendants/appellees Epsilon Epsilon Chapter of Delta Tau Delta Fraternity, Epsilon Epsilon Educational Foundation, Brett Harper Anderson, Bradley Reed Bergamo, Paul Jude Biondolillo, Joshua Christopher Bliss, Matthew James Bosco, Steven Penn Bryan, Anthony Charles P. Caputo, Thomas David Carlson, Stephen Michael Carpenter, Jeffrey David Catlin, Nathaniel Louis Derby, Albert Edward Dietrich IV, Clo Earl Edgington, Karam Elias Farah, Christopher Todd Flavio, Gerritt Andrew Gehan, Barry James Ginch, David James Henshall, Markus Rudolph Holtby, Mark Thomas Hopkins, David Laurence Ison, Douglas Edward Jameson, Gregory Richard Janis, Rex Edward Jorgensen, Jay Adam Josephs, Craig Landon, Sean David Leahy, Dale R. Lemon, John Conrad Miller, Christopher J. Molloy, Harrison Lane Morton, Kurt Richard Munzinger, Paige Ray Peterson, Kenneth S. Plache, Daniel Lee Rasmus, Scott Allen Remington, Paul Anthony Reynolds, James Samuel Rigberg, Gary Edward Rink, Erick Jon Roberts, Michael Daniel Roth, George Evangelos Roussos, Charles Dana Sacks, Thomas McKinlay Schwarze, William John Sheoris, Douglas Todd Sims, Clifford Lawrence Smith, Kristopher James Stathakis, Roger Sanford Stinnett, Anthony Charles Suriano, Eric Joseph Szoke, Nelson Sterlin Udstuen, Scott Urban, Larry Wagner, Todd Eric Wallis, Jonathan Blakeslee Woodard, Michael Patrick Woodward, Jeffrey Ryan Wyne, and David Hall Yohe.

Ridenour, Swenson, Cleere & Evans by Harold H. Swenson, Richard H. Oplinger, Robert R. Byrne, Phoenix, for defendants/appellees John Christopher Manross and Douglas Matthew Stoss.

Law Office of Kevin E. Miniat by Kevin E. Miniat, Tucson, for defendant/appellee James Frank Uppendahl.

Begam, Lewis, Marks, Wolfe & Dasse, P.A. by Stanley J. Marks, Michael J. D'Amelio, Phoenix, for amicus curiae Mothers Against Drunk Driving (MADD).

## OPINION

FELDMAN, Chief Justice.

We review a court of appeals opinion affirming summary judgment for defendants. The trial court held that A.R.S. § 4–312(B) immunizes a social host from liability for serving alcohol to a minor who became intoxicated and injured an innocent third party. The court of appeals affirmed. *Estate of Hernandez v. Arizona Board of Regents,* 172 Ariz. 522, 838 P.2d 1283 (Ct.App.1991). It held A.R.S. § 4–312(B) severable from A.R.S. § 4–312(A), which we declared unconstitutional in *Schwab v. Matley,* 164 Ariz. 421, 793 P.2d 1088 (1990). The court of appeals also found that A.R.S. § 4–312(B) did not violate the anti-abrogation provisions of Ariz. Const. art. 18, § 6.

We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24. We granted review to determine whether a non-licensee can be liable for damages for furnishing alcohol to a person under the legal drinking age who subsequently harms a third party.[1] *See* Ariz.R.Civ.P. 23(c)(4).

## FACTS

■ When reviewing a grant of summary judgment, we examine the facts in the light most favorable to the party opposing the motion. *Gulf Ins. Co. v. Grisham,* 126 Ariz. 123, 124, 613 P.2d 283, 284 (1980).

On August 27, 1988, a University of Arizona fraternity welcomed new members with a bid party. As was customary, the fraternity served alcohol. To purchase alcohol for social events, the fraternity maintained a separate fund to which all imbibing members contributed. The social fund chair, a member over the age of twenty-one, collected and held the liquor money, and ensured that non-contributing members did not drink at parties.

The fraternity's officers kept background records on all members and were aware of their ages. As of August 27, 1988, a majority of the members were under the legal drinking age of twenty-one. However, all members, regardless of age, could contribute to the fund; and contribution was the sole criterion to drink at parties. Several hundred people generally attended these functions, but the fraternity checked neither members nor non-members for proof of age.

John Rayner, a contributing fraternity member under twenty-one, drank at the bid party that night. At 1:45 a.m., Rayner's car crashed into a vehicle driven by Ruben Hernandez. Rayner was driving over forty in a twenty-five mile-per-hour zone. At 2:30 a.m., his blood alcohol level was .15, exceeding the limit set by A.R.S. § 28–692(A)(2). The crash left Hernandez blind, severely brain-damaged, and quadriplegic.

Hernandez brought an action against Rayner for personal injuries, and his three adult children joined in the action to recover loss of consortium. Hernandez later amended the complaint to add as defendants: (1) the fraternity; (2) each fraternity member who contributed to the social fund that semester; (3) the lessor of the property on which the fraternity house was located; (4) the national fraternity organization; (5) the Arizona Board of Regents; and (6) a student assigned to the fraternity through a university student education program aimed at reducing alcohol-related problems among fraternities and sororities. Hernandez died in July 1990, and his personal representative was substituted as a plaintiff. Rayner settled and was dismissed from the suit. We refer

---

1. We consolidated this case for oral argument with *Petolicchio v. Santa Cruz County Fair & Rodeo Ass'n,* No. CV–92–1098–PR, and *Simental v. Magma Copper Co.,* No. CV–92–0036–PR, which present related issues.

to the remaining defendants collectively as "Defendants."

## LEGISLATIVE BACKGROUND

At one time, Arizona arguably did not recognize civil liability for those who furnished or sold alcohol that was a contributing factor in a later accident.[2] *See, e.g., Lewis v. Wolf,* 122 Ariz. 567, 568, 596 P.2d 705, 706 (Ct.App. 1979); *Profitt v. Canez,* 118 Ariz. 235, 236, 575 P.2d 1261, 1262 (Ct.App.1978). In 1983, however, we held that a licensed tavern owner could be liable to third persons injured by an intoxicated patron. *See Ontiveros v. Borak,* 136 Ariz. 500, 667 P.2d 200 (1983). We also held that the tavern owner could be liable to a minor who was furnished alcohol and, as a result, injured himself. *See Brannigan v. Raybuck,* 136 Ariz. 513, 667 P.2d 213 (1983).

Following these decisions, in April 1985, the Arizona Legislature enacted A.R.S. § 4–301, dealing with "social hosts" and granting civil immunity to non-licensees who serve alcohol to a person *over* the legal drinking age. One obvious purpose of § 4–301 was to limit any extension of *Ontiveros* and *Brannigan* to non-licensees. The statute reads:

**Liability limitation; social host**

A person other than a licensee ... *is not liable* in damages to any person who is injured, or to the survivors of any person killed, or for damage to property, which is alleged to have been caused in whole or in part *by reason of the furnishing* or serving *of spirituous liquor to a person of the legal drinking age.*

A.R.S. § 4–301 (emphasis added).

The following year the legislature enacted 1986 Ariz.Sess. Laws ch. 329, entitled "Illegal Sale of Spirituous Liquor." This act had only two sections, designated §§ 4–311 and 4–312. In pertinent part, the first provides:

**Liability for serving intoxicated person or minor; definition**

A. A *licensee* is liable for property damage and personal injuries or is liable to a person who may bring an action for wrongful death pursuant to § 12–612 if a court or jury finds the following:

1. The licensee sold spirituous liquor either to a purchaser who was obviously intoxicated, or to a purchaser under the legal drinking age without requesting identification containing proof of age or with knowledge that the person was under the legal drinking age, ....

A.R.S. § 4–311(A) (emphasis added).

The other provision, § 4–312(B), reads:

**Liability limitation**

Subject to the provisions of subsection A of this section [3] and *except as provided in section 4–311, a person, firm, corporation or licensee is not liable* in damages to any person who is injured, or to the survivors of any person killed, or for damage to property which is alleged to have been caused in whole or in part *by reason of the sale, furnishing or serving of spirituous liquor.*

(Emphasis added). In *Schwab* we did not address the scope and effect of the immunity purportedly granted by § 4–312(B), but we must do so now.

## DISCUSSION

**A. Does A.R.S. § 4–312(B) provide immunity to non-licensees who illegally furnish alcohol to persons under the legal drinking age?**

Defendants argue that they are protected under the language of § 4–312(B), which im-

---

**2.** *But see McFarlin v. Hall,* 127 Ariz. 220, 619 P.2d 729 (1980) (court found liability when bar owner continued to serve intoxicated patron with knowledge of patron's violent temper, and failed to warn or protect fellow patrons, one of whom the intoxicated patron shot in parking lot); *Pratt v. Daly,* 55 Ariz. 535, 104 P.2d 147 (1940) (court found liability based on server's knowledge of imbiber's alcoholism).

**3.** A.R.S. § 4–312(A) limited liability by preventing intoxicated persons and their companions from suing the *licensee* provider of the alcohol.

In *Schwab,* we found this section unconstitutional because it mandated a finding of contributory negligence and assumption of the risk, impermissibly infringing on the jury's right to decide the question in "all cases" as guaranteed under the Arizona Constitution. *Schwab,* 164 Ariz. at 425, 793 P.2d at 1092; Ariz. Const. art. 18 § 5; *see generally* Richard Gordon, Note, Schwab v. Matley: *The Constitutionality of the Legislative Attempt to Limit Dramshop Liability in Arizona,* 33 Ariz.L.Rev. 955 (1991).

munizes all persons, firms, or corporations not liable under § 4–311. Under Defendants' reading, therefore, § 4–312(B) confers blanket immunity on everyone except those *licensees* who may be liable, in certain instances, under § 4–311. If correct, this theory would immunize Defendants and all non-licensees, including social hosts, under all circumstances.

### 1. *The effect of A.R.S. § 4–301*

■ Defendants' argument stretches § 4–312(B) much too far for two reasons. First, it overlooks § 4–301, which is in the same chapter as §§ 4–311 and 4–312. By its title, § 4–301 is applicable to social hosts and immunizes only those non-licensees who furnish or serve alcohol "to a person of legal drinking age." Conspicuously absent from § 4–301 is any provision immunizing non-licensees who serve those under the legal drinking age. It is a familiar if overused rule that a statute's expression of one or more items of a class indicates legislative intent to exclude unexpressed items of the same class. *Pima County v. Heinfeld*, 134 Ariz. 133, 134, 654 P.2d 281, 282 (1982); *Wells Fargo Credit Corp. v. Arizona Property & Cas. Ins. Guar. Fund*, 165 Ariz. 567, 571, 799 P.2d 908, 912 (Ct.App.1990).

Second, and as important, common sense tells us that when, in dealing with a very controversial subject,[4] the legislature took the trouble to expressly grant immunity for furnishing alcohol to persons of legal drinking age, it meant to exclude from its largesse those who furnish alcohol to persons below that age. We see no other rational construction of § 4–301, nor has any been suggested. We conclude, therefore, that § 4–301 covers non-licensee liability and grants no immunity when, as in this case, a non-licensee furnishes liquor to an underaged person. Defendants concede this interpretation but argue that § 4–301 was repealed.

### 2. *Implied repeal*

Notwithstanding the lack of express repeal, Defendants claim that § 4–301 is no

longer in effect because it conflicts with the provisions of § 4–312(B), which grants immunity to all persons, firms, or corporations except those licensees liable under § 4–311. Because § 4–312 was passed after § 4–301, Defendants argue we must resolve the conflict in the statutes by construing § 4–312 as repealing § 4–301. *Lemons v. Superior Court*, 141 Ariz. 502, 505, 687 P.2d 1257, 1260 (1984). We disagree.

■ The law does not favor construing a statute as repealing an earlier one by implication. *Pima County v. Maya Construction Co.*, 158 Ariz. 151, 155, 761 P.2d 1055, 1059 (1988); *Mead, Samuel & Co., Inc. v. Dyar*, 127 Ariz. 565, 568, 622 P.2d 512, 515 (Ct.App. 1980). Rather, whenever possible, this court interprets two apparently conflicting statutes in a way that harmonizes them and gives rational meaning to both. *Id.* We can do so here with a construction that both fulfills legislative intent and furthers legislative goals.

### a. *"Plain wording"*

■ Defendants submit that the words of § 4–312(B)—"a person, firm, corporation or licensee is not liable,"—are plain and must be applied accordingly. They read the words as granting immunity to *every* person, firm, or corporation, licensed or not, except those *licensees* liable under § 4–311 for sale to intoxicated or underaged persons. When determining legislative intent, they argue, courts must apply the ordinary meaning of the words used. This, of course, is true "unless it appears from the *context* or otherwise that a different meaning should control." *State v. Raffaele*, 113 Ariz. 259, 262, 550 P.2d 1060, 1063 (1976) (emphasis added).

■ If read in isolation, the provisions of § 4–312(B) may seem unambiguous. However, given § 4–301, Defendants' broad interpretation is insupportable. We believe the section headings are telling. Although section headings are not part of the substantive law, *see* § 1–212, they aid interpretation

---

4. The subject of this legislation was hotly debated. *See, e.g., New law takes aim at teen-age 'keg parties,'* Ariz. Daily Star, May 4, 1985, § B, at 6.

when uncertainty exists. *State v. Barnett,* 142 Ariz. 592, 597, 691 P.2d 683, 688 (1984).

All three statutes are in chapter 3 of title 4. The chapter is entitled "Civil Liability of Licensees and Other Persons." The legislature first addressed "other persons"—non-licensee, non-sale liability—in article 1 of chapter 3, denominated as § 4-301, "Liability limitation; *social hosts*" (emphasis added). The following year, the legislature added article 2 to chapter 3, entitled "Illegal *Sale* of Spirituous Liquor" (emphasis added). These headings at least indicate that the legislature intended the first article (consisting of § 4-301) to apply to transactions other than sales and the second article (§§ 4-311 and 4-312) to apply to sales under a license.

### b. *Legislative intent*

We would be reluctant, of course, to base construction of such important statutes on chapter headings and section titles. However, Defendants' argument that the conflict in the statutes indicates legislative intent to repeal the earlier statute has yet another fatal flaw. We believe that we would not only defy common sense if we were to conclude that § 4-301 was repealed by implication on adoption of § 4-312 but would attack legislative competence as well.

Section 4-301 is not a technical provision that could be overlooked and impliedly repealed by a legislative committee engaged in the revision of some obscure portion of the code. Although such oversights may occur with legislative bodies and others, we deal here with three statutes passed by the same legislature. These statutes were contained in the same chapter and dealt with a subject that, after *Ontiveros* and *Brannigan,* was one of the most controversial before the legislature.[5] In essence, Defendants ask us to assume that in 1986, when the legislature added article 2 (§§ 4-311 and 4-312) to chapter 3, it forgot that just the previous year it had adopted article 1 of that chapter, expressly providing for only a partial limitation of social host liability. We do not assume so easily that the legislature was unaware of its own actions. Nor does the legislature's own language admit of such a conclusion.

In 1985, when enacting § 4-301, the legislature's stated purpose was "in no way [to modify] existing law with respect to the principles of civil liability applicable to licensees who sell, furnish or serve spirituous liquor." A.R.S. § 4-301, Historical Note. We believe the only rational conclusion is that in 1985 the legislature enacted a provision (§ 4-301) dealing only with the liability of non-licensees, and in 1986, the same legislature, after further debate and thought, followed with two complementary provisions (§§ 4-311 and 4-312) regulating only licensee liability. We believe common sense makes this conclusion much more likely than the "legislature forgot" argument that we would otherwise have to adopt if we found an implied repeal.

■ The legislative record further indicates the lawmakers' intent to address only licensees by the 1986 enactments. Legislative committee members considering § 4-312 discussed "bar owners" and "liquor establishments," but *never* even mentioned social hosts or non-licensees in reference to the statute. *See* Minutes, Committee on Judiciary, H.B. 2376, March 3, 1986. They referred to the proposed law as "dramshop legislation." *Id.* The legislative minutes also contain numerous comments by bar and restaurant owners, and the Arizona Licensed Beverage Association,[6] indicating that the pur-

---

5. For example, in one of several articles, the Arizona Daily Star called *Ontiveros* and *Brannigan* "landmark decisions." The paper, quoting a legislator about resulting legislation, stated "[a]nytime you get into legislation that involves alcohol, you get into a lot of discussion." *See Bars liable for patrons, state justices rule,* ARIZ. DAILY STAR, July 7, 1983, at 9.

6. We consider this testimony in conjunction with the legislators' own comments and only to discern the subject matter. Little weight is generally given to non-legislative testimony when determining legislative intent, unless there is some indication that such evidence reflects the legislators' views. *See Turner v. Prod,* 707 F.2d 1109, 1119 (9th Cir.1983) ("[T]estimony of witnesses before congressional committees prior to passage of legislation generally constitutes only 'weak evidence' of legislative intent.") (citing 2A C.D. SANDS, STATUTES AND STATUTORY CONSTRUCTION, A REVISION OF THE THIRD EDITION OF SUTHERLAND ON STATUTORY CONSTRUCTION § 48.10 (4th ed. 1973)), *rev'd on other grounds, Heckler v. Turner,* 470 U.S. 184, 105 S.Ct. 1138, 84 L.Ed.2d 138 (1985).

pose of the 1986 legislation was to alleviate commercial vendors' difficulties in obtaining affordable liquor liability insurance. *Id.* The owner of one Tempe establishment testified that his insurance premiums had jumped from $43,000 in 1983 (when there was almost *no* common-law liability) to $113,000 in 1985. *Id.* This testimony was typical of that given by several other individuals in the restaurant and bar industry. *Id.*

Some further history helps to clarify legislative intent. After passing §§ 4–311 and 4–312, citizens groups attempted to place the legislation on the November 1986 general election ballot as Proposition 301. *See* Proposition 301, Publicity Pamphlet. The measure evidently did not qualify. *See* State of Arizona Official Canvass, Nov. 4, 1986 (an official list of all measures that were actually on the ballot). Proposition 301 does not appear on the canvass—presumably because the sponsor did not collect the required signatures—but the Arizona Attorney General's Office published the necessary publicity pamphlet.

As required by § 19–124,[7] a simple analysis and a "pro" and "con" argument written by the Arizona Legislative Council, with input from informed and interested legislators, accompanied Proposition 301 in the publicity pamphlet. This analysis of Proposition 301 discussed *only* licensee liability, and in reference to § 4–312(B) states, "if the conditions listed in paragraphs 1, 2 and 3 above [§ 4–311] do not exist, then the *liquor licensee* is not liable." Proposition 301, Publicity Pamphlet (emphasis added). In its supporting statement, the council even gave meaning to the terms "person," "firm," and "corporation" in the context of a liquor licensee. When discussing the "server" of liquor it stated, "every time a server pours a drink, he is

exposing *himself* and the *owner of the business* to possible liability that can wipe out the business." *Id.* (emphasis added). Hence, we believe that the legislature's intent with respect to a person, firm, or corporation was to protect those associated with licensees. Our reading is reinforced by the wording of § 4–301, which excludes from immunity an employee of a licensee acting in connection with employment. This illustrates the legislature's belief that the word "licensee" is broad enough to encompass those beyond the actual license holder.

In short, every aspect of the statute's history indicates a legislative intent to regulate non-licensee liability under § 4–301 and licensee liability under §§ 4–311 and 4–312.

### c. *Overall legislative scheme*

█ As this court has stated, "[w]hen the text of a statute is capable of more than one construction or result, 'legislative intent on the specific issue is unascertainable, and more than one interpretation is plausible, we ordinarily interpret the statute in such a way as to achieve the general goals that can be adduced from the body of legislation in question." *Dietz v. General Elec. Co.,* 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991); *see also City of Phoenix v. Superior Court,* 144 Ariz. 172, 175–76, 696 P.2d 724, 727–28 (Ct.App. 1985).

The legislature's goals are clear. As pointed out in an amicus curiae brief, the legislature has responded to the tragic problem of underaged drinking[8] with a strong policy of deterrence. The statutory scheme includes § 4–244(9), which creates criminal penalties for both *minors* who possess alcohol and licensees *or others* who serve alcohol to anyone *under the legal drinking age;* § 4–241(A), which requires a licensee *or other*

---

7. The version of § 19–124, in effect in 1986 stated:

> B. Not later than sixty days preceding the regular primary election the legislative council, after providing *reasonable opportunity for comments by all legislators,* shall prepare and file with the secretary of state an analysis of the provisions of each ballot proposal of a measure or proposed amendment....

(Emphasis added.)

8. The statistics are alarming. In 1990, about 30.8% of fatally injured 16- to 20-year-old driv-

ers were intoxicated at the time of the accident. More than 43% of all deaths of 16- to 20-year-olds in 1990 resulted from automobile accidents. Almost half of those were alcohol-related. Of all persons arrested for DUI/DWI nationally, approximately 26% were under the age of 25. Alcohol is a factor in 21% of all college dropouts and that likely costs nearly $210 million in tuition in 1991. MADD Amicus Curiae Brief, Appendix A.

*person* to demand identification before serving liquor to a person *who appears underage;* § 4–301, which grants immunity to social hosts only when serving those *of the legal drinking age;* § 4–312(A), which implies, among other things, that licensees are liable for injuries resulting from a licensee's service *to a minor;* and § 8–249 (the "not a drop" law), which allows courts to suspend the driver's license of a minor who drives while possessing or consuming *any* alcohol.

As a whole, this body of legislation reveals a definite scheme. The legislature has imposed criminal and other sanctions on all persons who, whether licensed or not, furnish alcohol to minors. Given this, it is unreasonable to assume that the legislature would provide civil relief to those who act illegally by serving alcohol to minors. Such a reading of § 4–312(B) would give civil immunity to someone whose conduct could even result in a charge of manslaughter. *See State v. Marty,* 166 Ariz. 233, 801 P.2d 468 (Ct.App.1990) (defendant can be guilty of manslaughter by supplying drugs and alcohol to driver who subsequently dies in accident).

The parties have not cited, and we cannot find, any instance where the legislature has expressed such an intent. We can see no indication that the legislature wanted to abandon its comprehensive fight against the cost and carnage created by underage drinking and driving by granting immunity to those who illegally furnish alcohol to minors.

### 3. *Resolution*

We conclude, therefore, that the most plausible interpretation of § 4–312(B) is that the immunity it grants applies solely to liquor licensees and their associates. In the statute, the word "person" must refer to a licensee's agent or employee, while "firm or corporation" refers to any entity associated with the licensee, such as a partner, landlord, subsidiary corporation, or the like. The most reasonable construction is that by enacting § 4–312(B), the legislature protected only licensees and those associated with a licensee's permitted activities from personal liability, "subject to" the common-law liability expressed in *Ontiveros* and *Brannigan* and codified in § 4–311.

This interpretation harmonizes all three statutes. It leaves § 4–301 intact, reconciles potentially conflicting wording in all three statutes, and implements the overall intent expressed in the chapter's title, the legislative history, and the entire body of Arizona law on alcohol and minors.

We hold, therefore, that the term "person, firm or corporation" in § 4–312(B) is intended to protect from liability only licensees and their associates who conduct a transaction permitted under a license for the "sale, furnishing or serving" of alcohol. We further hold that § 4–312(B) has no effect on non-licensee liability under § 4–301. The statutory immunity granted by § 4–301 applies only when a non-licensee furnishes alcohol to "a person of legal drinking age." Thus, no statutory immunity protects Defendants—all of whom are non-licensees who furnished alcohol to a minor.

This holding obviates the need to determine the constitutionality of A.R.S. § 4–312 under Ariz. Const. art. 18, § 6 or other issues such as severability, de facto licensee, and retroactivity. Having determined that Defendants are not protected by any statutory immunity, we turn now to the question of common-law liability.

### B. Is there a common-law cause of action against a social host who serves alcohol to a minor?

#### 1. *The effect of A.R.S. § 4–301*

Defendants argue that if we sustain Hernandez' claim, we create a new cause of action, infringing on the legislature's realm. Given the noted statutory provisions, we see no infringement on legislative prerogative. Indeed, we believe that by granting immunity in A.R.S. § 4–301 only to those non-licensees who furnish or serve alcohol "to a person of the legal drinking age," the legislature left this court to determine the liability, if any, of social hosts who furnish or serve alcohol to those under the legal drinking age. We see no other explanation for legislative action immunizing non-licensees who serve those of legal age and legislative silence on the question that then comes into focus:

what about the liability of those who serve underaged drinkers?

Thus, we see no reason to "pass the buck" to the legislature. By the words of § 4–301, the lawmakers have obviously left resolution of this issue to us, and we would abdicate our responsibility by refusing to decide it.

## 2. *The effect of criminal statutes*

The common-law rule of non-liability was based on either a lack of causation or a lack of duty. The existence of a statute criminalizing conduct is one aspect of Arizona law supporting the recognition of duty in this cause of action. Like other states,[9] Arizona has a statute making it a criminal offense to furnish alcohol to a minor. A.R.S. § 4–244(9). A criminal statute may establish a tort duty if the statute is "designed to protect the class of persons, in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation...." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 36, at 229–30 (5th ed. 1984).

We have previously relied on § 4–244 to sustain a cause of action against those who furnish alcohol to minors.

We believe that A.R.S. § 4–244(9) ... constitute[s] legislative recognition of the foreseeable danger to both the patron and third parties, and an effort to meet that danger by enactment of laws designed to regulate the industry, to protect third persons, and to protect those who are under-age from themselves.

*Brannigan*, 136 Ariz. at 517, 667 P.2d at 217.

Although *Brannigan* addressed licensee liability, § 4–244(9) makes it a crime for *anyone* to furnish alcohol to a minor. We believe the rationale of *Brannigan* is certainly broad enough to apply to the facts of this case.[10] Here, as in *Ontiveros* and *Brannigan*, we find Defendants' violation of the statute further supports a civil cause of ac-

tion. These provisions are not new. The statutory prohibition against furnishing alcohol to a minor is long settled in Arizona. It was a crime as early as 1887. "Every person who shall directly or indirectly, knowingly ... give away any intoxicating liquor to any minor ... without the consent of [the minor's] guardian or parent, shall be deemed guilty of a misdemeanor, ..." Arizona Penal Code § 514 (1887); *see also* Arizona Penal Code § 270 (1901) (adopting the same ban). Based on past and present statutes, we see no constriction of the duty of social hosts under the facts of this case.

## 3. *Duty based on common-law principles*

Many state courts faced with a claim against a social host who served alcohol to a minor have found this to be a valid cause of action properly before the judiciary. *Cravens v. Inman*, 223 Ill.App.3d 1059, 166 Ill. Dec. 409, 586 N.E.2d 367 (Ill.Ct.App.1991) (citing cases), *rev. granted*, 143 Ill.2d 637, 167 Ill.Dec. 398, 587 N.E.2d 1013 (1992), *appeal dismissed*, 168 Ill.Dec. 19, 589 N.E.2d 133 (1992). *See generally* Edward L. Raymond, Jr., Annotation, *Social Hosts Liability for Injuries Incurred by Third Parties as a Result of Intoxicated Guest's Negligence*, 62 A.L.R. 4th 16 (1988). A minority of courts have left this problem to their legislatures for various reasons. *See, e.g., Cravens*, 166 Ill.Dec. at 420, 586 N.E.2d at 375–78. Most have deferred because their legislatures had "entered the field" and they felt the "policy decisions" were better left to them. *See, e.g., Bankston v. Brennan*, 507 So.2d 1385, 1387 (Fla.1987). As noted above, we believe that the legislature invited this court to decide the question of liability for those who furnish alcohol to minors by declaring an immunity extending only to adults. *See* A.R.S. § 4–301.

It is especially appropriate for this court to address this issue because, under Ariz.

---

9. *Cf.* Michael P. Rosenthal, *The Minimum Drinking Age for Young People: an Observation*, 92 DICK.L.REV. 649, 656 n. 62 (1988) ("every state bans sales [of alcohol] to minors").

10. We contrast these facts with those in *Keckonen v. Robles*, 146 Ariz. 268, 705 P.2d 945 (Ct.

App.1985), where the court of appeals found no duty upon which to extend liability to social hosts. In *Keckonen*, a social host furnished alcohol to an intoxicated adult. The court expressly excluded minors from the scope of its decision. *Id.* at 269 n. 1, 705 P.2d at 946 n. 1.

Const. art. 18, § 6, Arizona's judiciary shares responsibility for the evolution of the law of torts. *Law v. Superior Court of State of Arizona*, 157 Ariz. 147, 156, 755 P.2d 1135, 1143 (1993), ("[T]his court has an obligation to participate in the evolution of tort law so that it may reflect societal and technological changes.") (citing *Summerfield v. Superior Court*, 144 Ariz. 467, 698 P.2d 712 (1985)). This court is a proper forum in which to resolve this important issue. As we have held:

> [T]he common law, which is judge-made and judge-applied, can and will be changed when changed conditions and circumstances establish that it is unjust or has become bad public policy. In reevaluating previous decisions in light of present facts and circumstances, we do not depart from the proper role of the judiciary.

*Ontiveros*, 136 Ariz. at 504, 667 P.2d at 204.

Before 1983, this court arguably recognized the common-law rule of non-liability for tavern owners and, presumably and *a fortiori*, for social hosts. *Id.* Traditional authority held that when "an able-bodied man" [11] caused harm because of his intoxication, the act from which liability arose was the consuming not the furnishing of alcohol. *See also Megge v. United States*, 344 F.2d 31, 32 (6th Cir.), *cert. denied*, 382 U.S. 831, 86 S.Ct. 69, 15 L.Ed.2d 74 (1965); 45 Am.Jur.2d *Intoxicating Liquors* § 553 (1969).

However, the common law also provides that:

> One who supplies ... a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise ... to use it in a manner involving unreasonable risk of physical harm to himself and others ... is subject to liability for physical harm resulting to them.

RESTATEMENT (SECOND) OF TORTS § 390 (1965) (hereinafter RESTATEMENT). Arizona's courts have repeatedly followed the RESTATEMENT'S analysis in this area. *See Powell v. Langford*, 58 Ariz. 281, 119 P.2d 230 (1941) (lending car to intoxicated driver); *Lutfy v. Lockhart*, 37 Ariz. 488, 295 P. 975 (1931) (giving automobile to incompetent driver); *see also Ontiveros*, 136 Ariz. at 508, 667 P.2d at 208 (same analysis as RESTATEMENT § 390).

Even in an earlier era, it was actionable negligence to furnish a minor with a dangerous instrument. For example, in *Anderson v. Settergren*, 100 Minn. 294, 111 N.W. 279 (1907), relying on a criminal statute making it illegal for one under the age of fourteen to possess a gun, the Minnesota Supreme Court held the defendant liable for damage resulting from furnishing a thirteen-year-old with a gun. The court stated: " 'Every man must be taken to contemplate the probable consequence of the act he does.' " *Id.* 111 N.W. at 280–81 (quoting *Townsend v. Wathen*, 103 Eng.Rep. 579, 580–81 (1808)).[12]

This principle, like RESTATEMENT § 390, found common application in cases involving furnishing cars to inexperienced, youthful, or intoxicated drivers. *See Engleman v. Traeger*, 136 So. 527, 530 (Fla.1931) ("every court in the land has recognized" liability for entrusting a car to a person who is drinking); *Ransom v. City of Garden City*, 113 Idaho 202, 743 P.2d 70 (1987) (city can be liable when police officer entrusted keys to intoxicated person who then caused an automobile accident).

We perceive little difference in principle between liability for giving a car to an intoxicated youth and liability for giving drinks to a youth with a car. If there should be a difference between duty in the former and the latter, no case cited has explained it to us, and we perceive none. If the recipient is known to be incompetent to receive the dan-

---

11. *See Cruse v. Aden*, 127 Ill. 231, 20 N.E. 73, 74 (1889) ("It was not a tort at common law to either sell or give intoxicating liquor to 'a strong and able-bodied man' ").

12. *See also Binford v. Johnston*, 82 Ind. 426 (1882) (holding defendant liable for harm caused from giving toy pistol loaded with gunpowder and ball to two boys, ages 10 and 12); *Carter v.*

*Towne*, 98 Mass. 567 (1868) (holding licensed gunpowder seller liable for harm caused by providing gunpowder to 8–year–old child); *Lynch v. Nurdin*, 1 Q.B. 30, 113 Eng.Rep. 1041 (1841) (finding that defendant negligently left horse and cart in street, causing child to be injured when he climbed into cart).

gerous instrument, it is irrelevant whether it is a loaded gun, a car, or alcohol. The theory of recovery is the same and was well-established long ago. This, perhaps, is the unarticulated rationale explaining why so many states now impose either common-law or statutory liability in cases such as this. *See Cravens*, 166 Ill.Dec. at 416, 586 N.E.2d at 374 (listing states). Perhaps these states have interpreted common-law concepts of duty as broad enough to encompass the liability of one who furnishes alcohol to a minor. *See, e.g., Wiener v. Gamma Pi*, 258 Or. 632, 485 P.2d 18 (1971); *Congini v. Portersville Valve Co.*, 504 Pa. 157, 470 A.2d 515 (1983); *Koback v. Crook*, 123 Wis.2d 259, 366 N.W.2d 857 (1985).

### 4. *Duty based on prior Arizona case law*

In 1940, this court sustained a claim for a wife's loss of consortium against defendants who had supplied liquor to her husband, despite knowing he was alcoholic. *Pratt v. Daly*, 55 Ariz. 535, 104 P.2d 147 (1940). Although it recognized that Arizona had no dram shop statute, this court held that there is a duty not to provide liquor to persons known to have subnormal ability to control their actions. *Id.* at 546, 104 P.2d at 151. As in the present case, the defendants in *Pratt* argued there was no Arizona precedent for such a decision and no common law to sustain the action, and therefore the court would be legislating if it allowed the claim to proceed. With great wisdom, Judge Alfred C. Lockwood replied:

> Every requested application of the principles of the common law to a new set of circumstances is originally without precedent, and some court must be the first one to make the proper application.
>
> In answer to the second question, ... [w]e are asked to declare what the common law is and always has been, and a declaration by us that it has always *permitted* such an action, even though none has ever actually been brought, is no more legislation than would be a declaration that it does not.

*Id.* at 545–46, 104 P.2d at 151.

A minor is similar to an adult who has diminished judgment and capacity to control his alcohol consumption. Moreover, unlike

*Pratt*, where the tortious conduct was legal, here it is illegal to furnish alcohol to a minor.

In *Brannigan*, this court sustained an analogous claim, basing its decision on the duty, foreseeability, and causation issues related to furnishing alcohol to a minor. We held in relevant part:

> A growing number of cases, however, have recognized that one of the very hazards that makes it negligent to furnish liquor to a minor ... is the foreseeable prospect that the [youthful] patron will become drunk and injure himself or others. Accordingly, modern authority has increasingly recognized that one who furnishes liquor to a minor ... breaches a common law duty owed ... to innocent third parties who may be injured.

*Brannigan*, 136 Ariz. at 516, 667 P.2d at 216 (citations omitted). Although *Brannigan* dealt with a licensee, the common-law concept of the duty of reasonable care logically applies whether the individual furnishing alcohol to an underage person is a licensee or social host.

Nor are considerations of proximate causation a reason to conclude there is no liability as a matter of law in all cases. *See Ontiveros*, 136 Ariz. at 505, 667 P.2d at 205 (finding that both furnishing and drinking alcohol contributed to the cause of the subsequent accident). Furnishing alcohol to underaged consumers creates an obvious and significant risk to the public. The facts of this case and its two companion cases are illustrative. We are hard pressed to find a setting where the risk of an alcohol-related injury is more likely than from underaged drinking at a university fraternity party the first week of the new college year.

### CONCLUSION

The factors we have considered on the issue of recognizing the common-law liability of those who provide alcohol to persons under the legal drinking age point to a single conclusion. Furnishing alcohol to underaged drinkers violates numerous statutes. It is outside the area of immunity from civil liability described by the legislature in A.R.S. §§ 4–301 and 4–312. It is within the area

256

left by the legislature to judicial decision. The conduct in question violates well-established common-law principles that recognize a duty to avoid furnishing dangerous items to those known to have diminished capacity to use them safely. These principles are embodied in Arizona authority and in the majority of cases that have examined the question of common-law duty.

■ We join the majority of other states, therefore, and conclude that as to Plaintiffs and the public in general, Defendants had a duty of care to avoid furnishing alcohol to underaged consumers.[13] We understand the need to specify in this area of tort law what we hold and what we do not. We hold only that the so-called traditional rule—if ever there was one—of non-liability when a non-licensee serves alcohol to minors does not exist in Arizona. We do *not*, in this opinion, lay down any rule of absolute liability for serving alcohol to minors. We also expressly refrain from addressing, considering, or deciding in any way the liability of non-licensees for serving adults or the validity of A.R.S. § 4–301 under Ariz. Const. art. 18, § 6.

■ Arizona courts, therefore, will entertain an action for damages against a non-licensee who negligently furnishes alcohol to those under the legal drinking age when that act is a cause of injury to a third person.

We vacate the court of appeals' opinion and reverse the trial court's judgment. Because we do not, at this stage in the case, reach the questions of negligence or cause in fact, we simply remand to the trial court for further proceedings.

MOELLER, V.C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.

---

**13.** In speaking of duty here, we include not only the concepts of duty as described in most cases, see, e.g., *Markowitz v. Arizona Parks Board,* 146 Ariz. 352, 706 P.2d 364 (1985), but also the concept of proximate cause, or the so-called able-bodied man theory, that was mixed with the duty issue in some of the older cases, such as *Cruse. See supra,* n. 10. In doing so, however, we do not address fact-intensive questions involving proximate cause or any question of negligence or cause in fact.