619 P.2d 1032

Ida WATTS, Individually and as surviving spouse of Guy S. Watts, Deceased, Appellant and Cross–Appellee,

v.

GOLDEN AGE NURSING HOME, a corporation, Appellee and Cross–Appellant.

No. 14687.

Supreme Court of Arizona, In Division.

Oct. 24, 1980.

Rehearing Denied Dec. 2, 1980.

Thur & Preston by Calvin C. Thur, Scottsdale, for appellant and cross–appellee.

Monbleau, Vermeire & Turley, P. C. by Lawrence Monbleau, Phoenix, for appellee and cross–appellant.

HOLOHAN, Vice Chief Justice.

Ida Watts, the plaintiff–appellant, brought an action in the superior court alleging three claims for relief against the defendant nursing home. The first claim was for negligence in causing her personal injuries. The second claim was for negligence in causing injuries to her husband which required her to incur medical expenses, and the second claim also asked for damages for intentional infliction of mental suffering. The third claim was brought by plaintiff as surviving spouse and alleged the wrongful death of her husband was caused by the negligence of the defendant. In the various claims the plaintiff sought both compensatory and punitive damages.

The case proceeded to trial, and the trial court granted directed verdicts in favor of the defendant on the claims for intentional infliction and wrongful death. The remaining issues were submitted to the jury and resulted in a verdict in favor of plaintiff for $7,000.00 in compensatory damages for her own injuries, $2,377.65 in compensatory damages for her expenses in the care of her husband, and $56,000.00 in punitive damages. The trial court granted a remittitur and reduced the punitive damages to $10,-000.00. A timely appeal was filed by plain-

tiff and a cross–appeal by defendant. We have jurisdiction pursuant to Rule 19(e), Rules of Civil Appellate Procedure, 17A A.R.S.

On appeal, plaintiff raises two issues. First, she argues that the application of remittitur to her punitive damages was improper. Second, she argues that the trial court should not have directed a verdict for defendant on her claim of intentional infliction of emotional distress. In its cross–appeal, defendant also raises two issues. First, defendant argues that the trial court erred in submitting the claim for punitive damages to the jury. Second, defendant argues that the trial court committed errors in admission of evidence.

The facts established by the record show that in May, 1972, plaintiff Ida Watts placed her husband, Guy, who was eighty–three and suffering from senility, in the Golden Age Nursing Home. Because of a tendency to fall down when unattended, Guy required assistance to be taken to the restroom. On her frequent visits, plaintiff would often find Guy in his chair in urine–stained clothing. Although the nurses would respond to a request to clean Guy up, it would usually take one–half hour to one hour before this was done. Consequently, plaintiff would routinely help Guy to a bathroom to clean him up herself. While performing this task in August, 1972, Guy slipped on the wet bathroom floor and fell on plaintiff, knocking her to the bathroom floor and causing fractures which required her to be hospitalized.

During plaintiff's hospitalization, Guy suffered another fall on August 21. This fall occurred while he was left unattended in the bathroom, at which time he attempted to stand up and walk away while his pants were wrapped around his ankles. When this last fall occurred, Sandy Bottemiller, the nurse's aide who was in charge of Guy at the time, helped him up and put him to bed, but she did not report the accident at that point. The next morning, it was discovered that Guy could not stand without pain and he was found to be suffering from a broken hip. He was then transfer-red to a hospital for treatment. The medical expenses were paid by plaintiff. Subsequently, Guy was transferred back to the nursing home.

Approximately three months after Guy had been transferred back, he was diagnosed as having terminal pneumonia. Although plaintiff visited Guy each day, she was not notified of this diagnosis until two days later, when Guy was transferred to a hospital. Two days after his hospitalization, Guy died of pneumonia.

I

The first issue to be considered relates to the propriety of allowing plaintiff to recover punitive damages on her claim for the medical expenses she incurred in treating her husband's broken hip. Defendant argues that punitive damages should never have been allowed: That any right to these damages abated at the death of plaintiff's husband.

The claim under consideration was filed by plaintiff to recover medical expenditures for the treatment of injuries to plaintiff's spouse caused by defendant's negligent conduct toward him. Normally, in an action by the injured spouse, punitive damages could be recovered if supported by the evidence. However, where the injured spouse is deceased, given that the surviving spouse can recover compensatory damages for the medical expenses, can that surviving spouse also collect punitive damages?

Although this issue has been resolved in various other jurisdictions, it is an open question in Arizona. However, the weight of authority seems to be against an award of punitive damages under the above circumstances. See Annot., 25 A.L.R.3d 1416 (1969); 22 Am.Jur. *Damages* § 254.

The California Supreme Court has stated the rule: "It is the general rule ... that in the absence of statute, exemplary damages are allowed only to the immediate person injured." *People v. Superior Court of Los Angeles County,* 9 Cal.3d 283, 287, 507 P.2d 1400, 1403, 107 Cal.Rptr. 192, 195 (1973). *See also Hughey v. Ausborn,* 249 S.C. 470, 154 S.E.2d 839 (1967).

In this case the plaintiff is suing in her own right, and she is not suing for the injury itself as a representative of her husband's estate. Her claim is for the expenses she incurred as a result of her husband's injuries. Thus any argument concerning what damages survive under A.R.S. § 14–3110, providing for survival of actions, is irrelevant. The plaintiff has not sued in a representative capacity.

We conclude that we should follow the general rule that punitive damages are personal to the injured victim. The award of punitive damages to the plaintiff was error and must be set aside. Our ruling on this issue disposes of plaintiff's argument that the trial judge should not have applied a remittitur to the punitive damage award.

## II

The next issue is plaintiff's argument that the trial judge should not have granted a directed verdict in favor of the defendant on plaintiff's claim of intentional infliction of emotional distress. The basis of plaintiff's intentional infliction claim is that the nursing home failed to notify her in a timely manner of the fact that her husband was terminally ill. The facts disclose that there was a two–day delay between the time of the diagnosis of terminal pneumonia and the time at which the nursing home advised plaintiff of this diagnosis.

Since the trial judge disposed of the intentional infliction claim by a directed verdict, all competent evidence, including all reasonable inferences to be drawn from such evidence, must be considered in favor of the plaintiff. *Byrns v. Riddell, Inc.,* 113 Ariz. 264, 550 P.2d 1065 (1976).

Three elements are required to establish a claim of intentional infliction of emotional distress: The defendant's conduct must be capable of being characterized as "extreme and outrageous;" the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; severe emotional distress must indeed occur as a result of defendant's conduct. Restatement (Second) of Torts § 46.

The Restatement in Comment d to Section 46 relating to the element of outrageousness provides:

Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

The above Comment makes clear that conduct necessary to sustain an intentional infliction claim falls at the very extreme edge of the spectrum of possible conduct. In differentiating between these types of conduct, "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery . . . ." Restatement (Second) of Torts § 46, Comment h.

The record in the present case indicates that there was only a relatively short (two–day) delay before plaintiff was made aware of the medical diagnosis concerning her husband Guy. She had visited with him most of each of those days. She was notified of his condition as soon as it became necessary to transfer Guy to a hospital. We believe that the neglect of the defendant in this instance is unjustifiable, but we do not believe that it rises to that degree necessary to classify the conduct as falling within that quite narrow range of "extreme and outrageous" conduct necessary to establish a claim of intentional infliction of emotional distress.

The trial court was correct in ruling as a matter of law that the plaintiff had failed to establish a claim of intentional infliction of emotional distress.

## III

The final issue to be considered involves two evidentiary objections raised by de-

fendant. First, defendant objects to plaintiff's use of the hearsay testimony of Guy's roommate, now deceased, in order to impeach one of the defendant's witnesses. Second, defendant objects to the introduction into evidence of the fact that defendant claimed the incident report concerning Guy's fall was privileged.

Turning to the first of these objections, the record discloses that when Guy fell and broke his hip, he was under the care of nurse's aide, Sandy Bottemiller. The record is in dispute as to the exact sequence of events leading up to this fall. In the incident report she made out the next day, Ms. Bottemiller claimed that she had merely walked across the room to turn down Guy's bed, during which time he fell. At trial, Ms. Bottemiller claimed to have no memory of the incident at all. On cross–examination plaintiff's counsel asked the witness whether Mr. Anderson, who was Guy's roommate and was present at the scene, had warned Ms. Bottemiller that she should not leave Guy unattended or that he would likely fall in an attempt to walk.

The defendant objected to cross examination in this are because it called for hearsay. The plaintiff urged that the purpose of the examination was for impeachment. The trial court permitted the examination for impeachment.

Impeachment is an attack upon the credibility of a witness, but it is not a process whereby substantive evidence is adduced. *Ries v. McComb*, 25 Ariz.App. 554, 558, 545 P.2d 65, 69 (1976). Under the circumstances the plaintiff was entitled to test the witness' recollection of events which occurred at the time of the incident. Great latitude is given to a cross–examiner to show everything which may in the slightest degree affect a witness' credibility. *State v. Trotter*, 110 Ariz. 61, 65, 514 P.2d 1249, 1253 (1973). We find no error in the admission of the impeachment testimony.

Defendant's second evidentiary objection related to the trial court's admission of the fact that the defendant claimed the incident report on Guy's fall was privileged. During a pre–trial deposition, defendant's director of nursing was questioned concerning the records kept regarding Guy's stay at the nursing home. When the questioning turned to Ms. Bottemiller's incident report on Guy's fall, the representatives of defendant argued that this report was privileged. At the subsequent trial, over timely objection, plaintiff was allowed to read to the jury this portion of the deposition.

The plaintiff maintained that the testimony of the director of nursing at her deposition was given after she reviewed the incident report by Ms. Bottemiller, and that testimony was directly contrary to the incident report. Plaintiff contended that the director of nursing knew that the defendant was claiming the incident report was privileged, and the director of nursing testified as she did because she believed she would not be impeached by the incident report.

Under the circumstances presented, we believe that the evidence was admissible to attack the credibility of the testimony of defendant's director of nursing.

The judgment of the superior court is affirmed except as to the award of punitive damages which are set aside.

HAYS and GORDON, JJ., concur.