716 P.2d 70

**Donald D. HELFOND, Plaintiff/Appellant,**

v.

**Bert STAMPER, Defendant/Appellee.**

**No. 2 CA–CIV 5530.**

Court of Appeals of Arizona, Division 2, Department A.

Feb. 28, 1986.

Stuart Herzog, Tucson, for plaintiff/appellant.

Chandler, Tullar, Udall & Redhair by John W. McDonald, Tucson, for defendant/appellee.

## OPINION

FERNANDEZ, Judge.

Appellant appeals from the trial court's granting of a summary judgment against his claim for intentional infliction of emotional distress. We find the ruling correct and affirm.

In June 1977 appellant Helfond purchased a New Jersey automobile insurance policy from State Farm Insurance Company. In accordance with New Jersey law, the policy contained a no-fault personal injury protection clause which provided for payment of reasonable medical expenses resulting from injury in an automobile accident. On August 15, 1977, appellant, while riding as a passenger in a third person's automobile, was injured in a collision in California. His injuries consisted primarily of bruises and abrasions to his left knee and to his head. He was treated at an emergency room and released. Between August 1977 and July 1982, State Farm paid approximately $56,000 for medical expenses, $20,000 for lost wages and $1,535 for services as a result of the soft tissue injuries Helfond sustained in the accident. During this period, over 100 doctors and therapists examined and treated appellant. He moved to Tucson in May 1981.

Appellee Bert Stamper is the claims superintendent of the Tucson claims office of State Farm and supervises a staff of eight or nine employees. On October 11, 1982, a claims representative wrote Helfond at appellee's direction and suspended his medical payments. Helfond then filed suit against State Farm and Stamper, alleging the following causes of action: 1) breach of contract (against State Farm only; the other counts were filed against both State Farm and Stamper), 2) tortious breach of covenant of good faith, 3) intentional infliction of emotional distress, 4) breach of fiduciary duty, 5) violation of doctrine of trust and confidence, and 6) violation of various statutes. The court granted Stamper's motion for summary judgment on all counts alleged against him. Appellant appeals only from the ruling as to count three, intentional infliction of emotional distress. State Farm is not a party to the appeal.

We review Stamper's conduct and assume it to be true in order to determine whether it is "extreme and outrageous" so as to support the cause of action. *Davis v. First National Bank of Arizona*, 124 Ariz. 458, 605 P.2d 37 (App.1979).

It is clear that New Jersey's no-fault law requires the insurance contract to provide personal injury protection (PIP) for payment of medical expenses without limit as to time or amount and without regard to most collateral sources. N.J.Rev.Stat. §§ 39:6A–4, 39:6A–6 (Supp.1985).

Prior to coming to Tucson appellant received medical, psychiatric and rehabilitative treatment for his injuries in Los Angeles and Philadelphia. In December 1979 State Farm investigated the validity of his claims and, after obtaining an independent medical examination by Dr. George Thompson, who concluded that appellant had recovered and was a hypochondriac, attempted to terminate his payments. However, appellant's physician refuted Dr. Thompson's report, and State Farm resumed payment.

Appellant's voluminous file was sent to Tucson in May 1981 and assigned to claims representative Brown. Appellee explored the possibility of a lump sum settlement but was advised by a New Jersey claims

agent that a policyholder's release would not stand a court challenge because of the unlimited PIP coverage. The claim file was then assigned to another claims agent who obtained a report from appellant's Tucson physician, Dr. Fuchs, which disagreed with Dr. Thompson's report and which diagnosed appellant's condition as accident-related. The claims agent also learned that appellant was receiving Blue Cross/Blue Shield insurance benefits as well as benefits from another insurance policy. The file was assigned to two other claims representatives, one of whom offered appellant $5,000 for a lump sum settlement after the file revealed that this would be contrary to New Jersey law.

Appellant was hospitalized at Tucson Medical Center from April 20 until May 2, 1982, when he was transferred to the pain clinic at St. Joseph's Hospital in Phoenix where he remained until September 10, 1982. State Farm paid appellant's medical expenses through July 8, 1982. In October a claims representative sent appellant a letter advising him that no further payments would be made to him because Blue Cross and Lincoln National Life Insurance had also paid his medical bills, that, under New Jersey law, State Farm would only pay what other collateral sources did not and that State Farm would make no further payments until it was reimbursed for these amounts.

After State Farm ceased payment, Helfond met with a claims representative and later met with Stamper. Stamper told Helfond that, after the independent medical examinations were completed, State Farm would have three choices: one, to pay his medical bills in full; two, to pay only the unpaid portion of the bills, or three, to pay none of the bills and to sue for the back payments for which he had also received collateral benefits. Stamper told Helfond he did not like, could not stand, or could not stomach (Helfond's witness could not remember his exact words) people who made their living off insurance companies. He told him that after his independent medical examination, Stamper's recommendation would be to sue him for the money that had

been paid by State Farm. He also recommended that Helfond get himself an attorney as soon as possible. Appellant claims this conduct, together with the other acts of appellee in denying the claim, constituted outrageous conduct so that it was improper to grant the summary judgment.

The Arizona Supreme Court, following the Restatement (Second) of Torts § 46 (1965), has defined the elements of intentional infliction of emotional distress as follows:

> "The defendant's conduct must be capable of being characterized as 'extreme and outrageous;' the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; severe emotional distress must indeed occur as a result of defendant's conduct." *Watts v. Golden Age Nursing Home,* 127 Ariz. 255, 258, 619 P.2d 1032, 1035 (1980).

In *Patton v. First Federal Savings & Loan Association,* 118 Ariz. 473, 578 P.2d 152 (1978), the supreme court affirmed the trial court's granting of defendant's motion for summary judgment on the issue of intentional infliction of emotional distress, relying on the following language in *Cluff v. Farmers Insurance Exchange,* 10 Ariz. App. 560, 562, 460 P.2d 666, 668 (1969):

> "Even if the defendant's acts are done 'wilfully, intentionally and maliciously' with 'intent to inflict mental suffering and emotional distress,' it becomes the duty of the court in the first instance, as society's conscience, to determine whether the acts complained of can be considered as extreme and outrageous conduct in order to state a claim for relief."

In *Watts v. Golden Age Nursing Home,* supra, the court held that conduct necessary to support a claim for intentional infliction of emotional distress "falls at the very extreme edge of the spectrum of possible conduct." 127 Ariz. at 258, 619 P.2d at 1035. An examination of the prior decisions of Arizona courts compels the conclusion that, in the instant case, the acts at-

**12**

tributed by appellant to Bert Stamper, even if true, are not sufficiently extreme and outrageous to support a claim for relief. See, e.g., *Patton v. First Federal Savings & Loan Association,* supra; *Midas Muffler Shop v. Ellison,* 133 Ariz. 194, 650 P.2d 496 (App.1982); *Venerias v. Johnson,* 127 Ariz. 496, 622 P.2d 55 (App.1980); *Cluff v. Farmers Insurance Exchange,* supra.

The trial court was correct in holding that appellant's claim against Stamper is denied as a matter of law.

Affirmed.

HATHAWAY, C.J., and HOWARD, P.J., concur.