891 P.2d 861

**Mark KNOELL and Vicki Knoell, husband and wife, parents of Timothy Knoell, deceased, Plaintiffs–Appellants,**

v.

**CERKVENIK–ANDERSON TRAVEL, INC., dba Student Tours, Defendant–Appellee.**

No. 1 CA–CV 91–0577.

Court of Appeals of Arizona, Division 1, Department A.

June 30, 1994.

Reconsideration Denied Aug. 4, 1994.

Review and Cross–Petition for Review Granted March 21, 1995.*

---

* Zlaket, J., of the Supreme Court, recused himself and *did not* participate in the determination of this matter.

Earl Terman Law Offices by Earl Terman, Robert Steven Sharp, Phoenix, for plaintiffs-appellants.

Teilborg, Sanders & Parks by Brian R. Burt, Rick N. Bryson, Phoenix, for defendant-appellee.

## OPINION

VOSS, Judge.

### FACTS AND PROCEDURAL HISTORY

Cerkvenik–Anderson Travel, Incorporated ("Cerkvenik") is a travel agency headquartered in Phoenix. It arranges, promotes, and hosts tours to Mexico for recent high school graduates. In 1988, Cerkvenik arranged a trip to Mazatlan, Mexico. Timothy Knoell ("Timothy"), the decedent son of Mark Knoell and Vicki Knoell ("Knoells") reserved a spot on that trip. Timothy was eighteen years old when he purchased and participated in the trip.

As part of the trip, Cerkvenik allegedly hosted parties in Mexico at which it furnished alcoholic beverages to trip participants, including Timothy. The legal drinking age in Mexico is eighteen. Cerkvenik did not have a liquor license from Arizona.

On June 9, 1988, Timothy allegedly jumped or fell to his death from the balcony of his hotel room after having abused alcohol provided by Cerkvenik for three days. Thereafter, Knoells filed this wrongful death action against Cerkvenik, amending their complaint to allege the following theories of liability: Count I (misrepresentation), Count II (dram shop), Count III (negligence), and Count IV (outrage).

Cerkvenik filed a motion to dismiss the amended complaint pursuant to Rule 12(b)(6), Arizona Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. Cerkvenik argued that all four counts were based on the claim that it supplied or caused to be supplied alcohol to

Timothy and that Timothy's death was the proximate result of his consumption of this alcohol. Accordingly, Cerkvenik contended that the four claims were barred by Arizona Revised Statutes Annotated ("A.R.S.") sections 4–301 and 4–312, which foreclose liability for anyone other than a liquor licensee for injuries resulting from the serving or furnishing of alcohol. Cerkvenik also argued that no cause of action for "outrage" exists in Arizona.

In response, Knoells contended that Cerkvenik should be held accountable under Arizona's dram shop laws as a de facto licensee. *See* A.R.S. §§ 4–301 and 4–312 (Supp. 1993). They also claimed that the legal drinking age of Arizona (twenty-one), not the legal drinking age of Mexico (eighteen), applies here. Therefore, they argued, even if Cerkvenik was a non-licensee, it was still liable under A.R.S. section 4–301 because it served liquor to an underage person—Timothy.

Knoells maintained that their claim for "outrage" stated a valid cause of action. They argued that the "tort of outrage" was set forth in the Restatement (Second) of Torts and should be recognized in Arizona. Alternatively, they argued that their claim of "outrage" states a claim for intentional infliction of emotional distress.

The trial court granted Cerkvenik's motion to dismiss, holding that the misrepresentation, dram shop, and negligence counts fail to state claims upon which relief can be granted because "[a]ll three Counts allege and flow from [Timothy's] consumption of alcohol, allegedly provided by, or encouraged by defendants." Thus, the court held that A.R.S. sections 4–301 and 4–312 foreclosed any liability. The court also dismissed the outrage claim of the amended complaint because it failed "to state a cause of action in the State of Arizona" because "[t]he tort of 'outrage' has never been recognized in [this state]." Knoells timely filed this appeal.

The following issues are presented for review:

## ISSUES

1. Are the claims contained in Knoells' amended complaint barred by A.R.S. sections 4–301 or 4–312(B)?

2. If any count is not barred by A.R.S. sections 4–301 or 4–312(B), does that count state a valid claim against Cerkvenik?

## DISCUSSION

### I. Standard of Review

■ On review of a motion to dismiss for failure to state a claim, the material allegations of the complaint are taken to be true. *Sierra Madre Dev., Inc. v. Via Entrada Townhouses Ass'n,* 20 Ariz.App. 550, 552, 514 P.2d 503, 505 (1973). In our review, this court will affirm the trial court's grant of the motion to dismiss for failure to state a claim only if Knoells could not be entitled to relief "under any facts susceptible of proof under the claims stated." *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 186, 677 P.2d 1292, 1294 (1984). This court may affirm for reasons other than those relied upon by the trial court. *Earthworks Contracting, Ltd. v. Mendel–Allison Constr. of Cal., Inc.,* 167 Ariz. 102, 109, 804 P.2d 831, 838 (App. 1990).

### II. Dram Shop Liability

Knoells allege that Cerkvenik violated Arizona's dram shop laws by supplying Timothy with alcohol; therefore it is liable for the damages resulting from his death. In response, Cerkvenik notes that it does not have an Arizona liquor license, and it contends that dram shop liability is foreclosed against non-licensees for injuries resulting from the serving or furnishing of alcohol.

#### A. Legislative Background

"[T]he rule of nonliability for tavern owners [was] the common law in Arizona." *Ontiveros v. Borak,* 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983); *see, e.g. Lewis v. Wolf,* 122 Ariz. 567, 568, 596 P.2d 705, 706 (App.1979). However, in 1983, the Arizona Supreme Court held that a licensed tavern owner could be liable to a third person for injuries caused by the intoxicated patron. *Ontiveros,* 136 Ariz. 500, 667 P.2d 200; *Brannigan v. Raybuck,* 136 Ariz. 513, 516, 667 P.2d 213, 216 (1983) (extending licensee's duty of care

to a minor who was furnished alcohol and, as a result, injured himself).

In response to these cases, in April 1985, the Arizona Legislature enacted A.R.S. section 4–301 to exempt from liability non-licensees who furnish alcohol to persons of legal drinking age. *Estate of Hernandez v. Arizona Bd. of Regents*, 177 Ariz. 244, 866 P.2d 1330 (1994). This statute was adopted as an emergency measure which became effective immediately. *Id.* at 248, 866 P.2d at 1334. It provides:

**Liability limitation; social host**

*A person other than a licensee* or an employee of a licensee acting during the employee's working hours or in connection with such employment *is not liable* in damages to any person who is injured, or to the survivors of any person killed, or for damage to property, which is alleged to have been caused in whole or in part by reason of the furnishing or serving of spirituous liquor *to a person of the legal drinking age.*

A.R.S. § 4–301 (1985) (emphasis added).

One week after this statute became effective, the court held that a social host was not liable to a third person injured by an intoxicated guest who was furnished alcohol by the social host. *Keckonen v. Robles*, 146 Ariz. 268, 272, 705 P.2d 945, 949 (App.1985). This statute was further applied to employer liability in *Bruce v. Chas Roberts Air Conditioning, Incorporated*, 166 Ariz. 221, 224, 801

---

P.2d 456, 459 (App.1990). By adopting A.R.S. section 4–301, the legislature "foreclosed liability for anyone, other than a licensee and his or her employees, for injuries resulting from the serving or furnishing of alcohol." *Id.* In 1986, the legislature passed A.R.S. sections 4–311 [1] and 4–312. A.R.S. section 4–312 provides in pertinent part:

**Liability limitation**

A. A licensee is not liable in damages to any consumer or purchaser of spirituous liquor over the legal drinking age who is injured or whose property is damaged, or to survivors of such a person, if the injury or damage is alleged to have been caused in whole or in part by reason of the sale, furnishing or serving of spirituous liquor to that person. . . . [2]

B. Subject to the provisions of subsection A of this section and except as provided in § 4–311, *a person, firm, corporation or licensee is not liable* in damages to any person who is injured, or to the survivors of any person killed, or for damage to property which is alleged to have been caused in whole or in part by reason of the sale, furnishing or serving of spirituous liquor.

A.R.S. § 4–312 (1986) (emphasis added).

*B. Cerkvenik is a Non–Licensee*

■ Cerkvenik does not hold an Arizona liquor license; therefore, Cerkvenik cannot

---

1. A.R.S. § 4–311 provides that a licensee is liable for personal injury, wrongful death, and property damages when those damages result from the licensee's service of alcohol to an obviously intoxicated or underage customer. A.R.S. § 4–311 does *not* apply to non-licensees.

2. The Arizona courts found A.R.S. § 4–312(A) unconstitutional, but upheld the constitutionality of A.R.S. §§ 4–301 and 4–312(B) as to non-licensees. *See Schwab v. Matley*, 164 Ariz. 421, 424–25, 793 P.2d 1088, 1091–92 (1990) (holding A.R.S. § 4–312(A) unconstitutional because it violates the constitutional right to have the defenses ,of contributory negligence and assumption of risk decided by the jury in all cases); *Bruce v. Chas Roberts Air Conditioning, Inc.*, 166 Ariz. 221, 225, 801 P.2d 456, 460 (App.1990) (holding that A.R.S. § 4–301 does not violate the non-abrogation clause of the Arizona Constitution (art. 18, § 6) since social hosts, including employers, are not liable for injuries related to negligent drinking at common law); *Estate of*

*Hernandez v. Arizona Board of Regents*, 172 Ariz. 522, 529–30, 838 P.2d 1283, 1288–91 (App.1991) (Division 2 of this court held that A.R.S. § 4–312(B) is severable from A.R.S. § 4–312(A) and therefore was not rendered void by the Arizona Supreme Court's finding in *Schwab* that A.R.S. § 4–312(A) was unconstitutional. The court further held that A.R.S. § 4–312(B) does not violate the non-abrogation clause because Arizona never recognized a common law action against social hosts for injuries suffered as a result of the furnishing of alcohol to a guest), *vacated*, 177 Ariz. 244, 866 P.2d 1330 (1994); *Petolicchio v. Santa Cruz County Fair & Rodeo Ass'n*, 172 Ariz. 587, 589–90, 838 P.2d 1348, 1350–51 (App.1992) (Division 2 of this Court held that A.R.S. § 4–312(B) violated Ariz. Const. art. 18, § 6 *when applied to licensees* ), *vacated*, 177 Ariz. 256, 866 P.2d 1342 (1994). The Arizona Supreme Court has never squarely decided the constitutionality of A.R.S. §§ 4–301 and 4–312(B).

be held liable under those sections of Arizona's dram shop laws that impose liability on licensees.

### 1. *Cerkvenik is not Liable Under Arizona's Dram Shop Laws as a De Facto Licensee*

Knoells argue that even though Cerkvenik is not a licensee it should be held liable under the dram shop laws as a de facto licensee because its failure to become licensed was unlawful. Specifically, Knoells argue that Cerkvenik was required to obtain an Arizona liquor license because it was dispensing liquor in the course of its commercial business. Accordingly, they contend that Cerkvenik should be treated as a licensee subject to the liabilities set forth in the dram shop laws. They maintain that a contrary result would contravene public policy regarding the regulation of liquor in Arizona and would encourage other Arizona businesses to forgo licensing in an effort to avoid dram shop liability.

■ Nothing in the Arizona statutes regulating the sale or consumption of alcohol supports Knoells' argument. The regulatory provisions of the Arizona liquor license statutes clearly limit their scope to Arizona. For instance, the licensing provision states: "It is unlawful [f]or a person to buy for resale, sell or deal in spirituous liquors *in this state* without first having procured a license duly issued by the board." A.R.S. § 4–244(1) (Supp.1993) (emphasis added). Clearly, Cerkvenik did not need an Arizona liquor license to distribute liquor in Mexico; accordingly, it should not be treated as a de facto licensee.

Knoells' reliance on a Kentucky case as support for their de facto licensee argument is misplaced. *Grayson Fraternal Order of Eagles, Aerie No. 3738, Incorporated v. Claywell,* 736 S.W.2d 328 (Ky.1987), is distinguishable from the matter at hand. In *Grayson,* the defendants unlawfully operated a bar for profit in a dry county in Kentucky where, by definition, it was impossible to get a liquor license. Defendants served alcohol to two men who were intoxicated and who later were involved in an automobile acci-

dent, killing a police officer. Kentucky's criminal statutes prohibited liquor licensees from selling liquor to a minor or to an obviously intoxicated person, and they also prohibited the sale of any liquor in a dry county. The *Grayson* court held that if it was unlawful for a licensee to sell liquor to an intoxicated person in a county permitting liquor sales, then it was unlawful for an unlicensed, illegal vendor to do so in a dry county. *Id.* at 333.

*Grayson* is not applicable here. Cerkvenik, unlike the defendant in *Grayson,* is not unlawfully attempting to circumvent the state liquor licensing laws—it is not distributing or selling liquor in Arizona. Therefore, unlike the Eagles Club, it should not be treated as a de facto liquor licensee.

### C. *The Appropriate State's Tort Laws*

Because two states [3] are involved, we must resolve the choice of law issue and apply the appropriate tort law.

In *Wendelken v. Superior Court,* 137 Ariz. 455, 671 P.2d 896 (1983), the Arizona Supreme Court adopted the Restatement (Second) of Conflict of Laws ("Restatement") to determine issues such as this. In *Wendelken,* an invitee was injured in Mexico and brought an action against the property owner on which the injury occurred. Although the injury occurred in Mexico, the supreme court held that Arizona had the most significant relationship to the occurrence and the parties involved. 137 Ariz. 455, 671 P.2d 896. In reaching its conclusion, the court considered the following as most significant: both parties were domiciled in Arizona, the invitation by the property owner was received and accepted in Arizona, no commercial action was involved, and Mexico's measure of damages would have undercompensated the invitee. *Id.*

Similarly, in *Hoeller v. Riverside Resort Hotel,* 169 Ariz. 452, 820 P.2d 316 (App.1991), this court followed the multi-factor analyses found in Restatement sections 6 and 145. In *Hoeller,* the court held that Arizona law should apply when a Nevada casino negligently served alcohol to an obviously intoxi-

---

**3.** The Restatement (Second) of Conflict of Laws uses "state" broadly to denote any territorial unit with a distinct general body of law. *See* Restatement § 3. Therefore, this term includes Mexico.

cated Arizona resident who later caused an automobile accident in Arizona, injuring four Arizona residents. *Id.*

Restatement section 145 sets forth the general principles by which tort choice of law questions are to be decided. Restatement section 145 provides:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Because Restatement section 145 specifically incorporates Restatement section 6, which enumerates principles underlying all choice of law questions, that section also must be considered. *See Gordon v. Kramer,* 124 Ariz. 442, 604 P.2d 1153 (App.1979); *Moore v. Montes,* 22 Ariz.App. 562, 529 P.2d 716 (1974). Restatement section 6 provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

We must determine which state has the "most significant relationship" to the parties and the issues in question. *Wendelken,* 137 Ariz. at 457, 671 P.2d at 898.

■ We apply the contacts mentioned in the Restatement to this case. The place of the injury was Mexico; however damages have been suffered in Arizona. It is alleged that injurious conduct occurred in both Arizona and Mexico depending on the tort: misrepresentation—in Arizona; negligence—in Mexico; intentional infliction of emotional distress—both Mexico and Arizona. Knoells domiciled in and were residents of Arizona. Cerkvenik is a company headquartered in Arizona and doing business in Arizona and Mexico. Cerkvenik advertised in Arizona, and the alleged misrepresentations were made, the reservation was accepted, and money was paid in Arizona. The "relationship between the parties" centered in Arizona.

"The determination of which state has the most significant contacts is primarily qualitative not quantitative." *Schwartz v. Schwartz,* 103 Ariz. 562, 447 P.2d 254 (1968). In addition to being the forum state and place of the trial, Arizona has a greater interest than Mexico in this matter. Furthermore, Arizona has an interest in the appropriate compensation of its residents, thus favoring Arizona's tort system which allows a more comprehensive scheme for recovering damages than Mexico's system. *See Wendelken,* 137 Ariz. at 458, 671 P.2d at 899.

After full consideration of the relevant factors and the interests of both states, we conclude that Arizona tort liability should be applied in this case.

### D. *The Appropriate Drinking Age*

Because we have applied Arizona tort law, we must determine whether Arizona's or Mexico's legal drinking age applies. Knoells

argue that even if Cerkvenik is a non-licensee, it is still liable pursuant to A.R.S. section 4–301. Knoells contend that by its very terms, A.R.S. section 4–301 limits liability arising from the furnishing of liquor "to a person of the legal drinking age," which is twenty-one in Arizona. A.R.S. § 4–301.

Cerkvenik contends that the alcohol was served in Mexico; therefore Mexico's legal drinking age should govern. We agree with Cerkvenik.

 While it is appropriate to apply the conflicts-of-laws analysis to determine which state's tort laws should apply, such analysis should accept the legitimacy of a person's acts if those acts were legal where they occurred. Here, Timothy's consumption of alcohol in Mexico was legal in Mexico. Arizona cannot enforce its legal drinking age on other states, let alone other countries. Laws regarding a minimum drinking age are territorial in nature, and a state has no right to regulate the sale or consumption of liquor outside of its own territory. *See United States Brewers Ass'n, Inc. v. Healy,* 692 F.2d 275, 281 (2d Cir.1982), *aff'd by* 464 U.S. 909, 104 S.Ct. 265, 78 L.Ed.2d 248 (1983). Therefore, our analysis applies Arizona's statutory scheme for tort liability, but Mexico's legal drinking age of eighteen.

### E. *A.R.S. Sections 4–301 and 4–312(B)*

As established above, Cerkvenik is a non-licensee. Cerkvenik argues, regardless of the legal drinking age, it is not liable because "a non-licensee is never liable for injuries caused in whole or in part by furnishing alcoholic beverages *to anyone.*" Cerkvenik cites A.R.S. sections 4–301 and 4–312(B) as authority for its argument. The Arizona Supreme Court recently resolved this issue. In *Hernandez,* the court held that A.R.S. section 4–312(B) does not apply to non-licensees. The legislature intended to regulate non-licensee liability under A.R.S. section 4–301 and licensee liability under A.R.S. sections 4–311 and 4–312(B). *Hernandez,* 177 Ariz. at 250–52, 866 P.2d at 1336–38. Furthermore, the court held that A.R.S. sections 4–301 and 4–312(B) do not immunize those who furnish

or serve alcohol to a person under the legal drinking age. The "traditional rule—if ever there was one—of non-liability when a non-licensee serves alcohol to minors does not exist in Arizona." *Id.*

Because Cerkvenik is a non-licensee, we apply A.R.S. section 4–301. Applying Mexico's legal drinking age, Cerkvenik may benefit from that statute's grant of immunity because Cerkvenik is a non-licensee that served alcohol to a person of the legal drinking age in Mexico when the incident occurred.

### F. *Constitutionality of A.R.S. Sections 4–301 and 4–312* [4]

The Knoells argue that A.R.S. sections 4–301 and 4–312(B) violate article 18, section 6 of the Arizona Constitution and are, therefore, unconstitutional. Article 18, section 6 of the Arizona Constitution, commonly referred to as the "non-abrogation clause" provides: "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." Ariz. Const. art. 18, § 6. Knoells claim that this constitutional protection is not limited to causes of action recognized at the time of statehood but encompasses causes of action which have evolved in the common law since that time. Accordingly, they argue that the dram shop liability which evolved out of the 1983 cases of *Ontiveros* and *Brannigan* is protected by the non-abrogation clause.

As determined in *Hernandez,* A.R.S. section 4–312(B) applies only to licensees. 177 Ariz. at 249–51, 866 P.2d at 1335–37. Because this statute is inapplicable here, we need not decide whether it violates the non-abrogation clause.

The constitutionality of A.R.S. section 4–301 has never been squarely decided by the Arizona Supreme Court. In *Hernandez,* the court "expressly refrain[ed] from addressing, considering, or deciding in any way ... the validity of A.R.S. § 4–301 under Ariz. Const. art. 18, § 6." *Hernandez,* 177 Ariz. at 256, 866 P.2d at 1342. Finding that the immunity granted in A.R.S. section 4–301 applies here,

---

4. A.R.S. § 4–312(A) deemed unconstitutional. *Schwab,* 164 Ariz. 421, 793 P.2d 1088.

we must address the constitutionality of that statute.

In the past, supreme court decisions have given different interpretations to the extent of the protection offered by the non-abrogation clause. The most recent authority on the subject is in *Hazine v. Montgomery Elevator Co.*, 176 Ariz. 340, 861 P.2d 625 (1993) (majority opinion). In *Hazine*, a divided court rejected the more limited view that the protection only extends to causes of action that existed at the time the Arizona Constitution was adopted. *Id.* at 344, 861 P.2d at 629–30. Instead, the majority held that the "evolution of common law causes of action—whether in duty, standard of care, or damages—falls within the broad coverage of art. 18, § 6." *Id.* at 344, 861 P.2d at 629. Accordingly, the court adopted the broad view of protection advanced by Knoells.

This expansive view of the protection offered by the non-abrogation clause does not render A.R.S. section 4–301 unconstitutional. Starting in 1983 with *Ontiveros* and *Brannigan*, Arizona courts have recognized dram shop liability for tavern owners and other liquor licensees. And more recently, the Arizona Supreme Court in *Hernandez* recognized a common law action against social hosts for injuries suffered as a result of furnishing alcohol to an *underage* guest. 177 Ariz. 244, 866 P.2d 1330. However, no case squarely holds that common law liability exists in Arizona for *non-licensees* serving persons of legal drinking age, even if the person is obviously intoxicated. See *Bruce*, 166 Ariz. at 225, 801 P.2d at 460, in which this court held that A.R.S. section 4–301 does not

violate the non-abrogation clause since no action against social hosts for injuries related to negligent drinking was recognized at common law. This underlying premise of *Bruce* has not been overruled.

 In recent dictum in *Hernandez*, the supreme court has suggested that there may be a basis for attributing common law liability to non-licensees such as Cerkvenik.[5] However, the supreme court has not yet squarely resolved this issue, and past cases are divided. We will not declare a statute unconstitutional unless we are satisfied beyond a reasonable doubt of its unconstitutionality. *Chevron Chemical Co. v. Superior Court*, 131 Ariz. 431, 641 P.2d 1275 (1982); *State v. Sutton*, 27 Ariz.App. 134, 551 P.2d 583 (1976), *aff'd in part, remanded in part*, 115 Ariz. 417, 565 P.2d 1278 (1977). Accordingly, we find no reason at this time to depart from our conclusion in *Bruce*.

### III. Intentional Misrepresentation or Fraud

 In their amended complaint, Knoells plead the nine elements needed to establish an intentional misrepresentation or fraud claim:

(1) a representation (the representations by Cerkvenik to parents regarding adequate supervision on the trip);[6]

(2) its falsity (Knoells argue these representations were, in fact, false);

(3) its materiality (Knoells would not have given Timothy their approval or financial assistance for the trip had they been aware of the truth);

---

5. In *Hernandez*, the court acknowledged that "[b]efore 1983, this court arguably recognized the common-law rule of non-liability for tavern owners and, presumably and *a fortiori*, for social hosts." 177 Ariz. at 254, 866 P.2d at 1340. However, also in *Hernandez*, the court acknowledged "the common-law principles that recognize a duty to avoid furnishing dangerous items to those known to have diminished capacity to use them safely." *Id.* at 255, 866 P.2d at 1341. The court chose to apply the latter common-law concept, indicating alcohol is similar to a dangerous item which a reasonable person would not provide to a minor. These conflicting common-law principles do not provide us with a clear path to decide our case. Furthermore, there are cases which state Arizona common law

provided non-liability for social hosts. *See, e.g., Bruce*, 166 Ariz. 221, 801 P.2d 456, *rev. denied.*

6. Cerkvenik argues that any promises it made about supervision on the trip cannot form the basis of a fraud action because in Arizona, "a claim for fraud ... does not lie for a promise to do something in the future." However, Arizona cases have recognized that a "promise, when made with a present intention not to perform it, is a misrepresentation which can give rise to an action of fraud." *Pinnacle Peak Developers v. TRW Investment Corp.*, 129 Ariz. 385, 388, 631 P.2d 540, 543 (App.1980). Here, Knoells specifically allege that Cerkvenik had no intention of providing the supervision at the time it made the promise to them.

(4) the speaker's knowledge of its falsity or ignorance of its truth (Knoells allege that Cerkvenik made these representations knowing that they were false or that it did not intend to perform the promised supervision);

(5) the speaker's intent that the representation should be acted upon by the person and in a manner reasonably contemplated (Knoells allege that the representations were made to parents to induce them to permit their children to participate in Cerkvenik's tours);

(6) the hearer's ignorance of its falsity (although not specifically plead, Knoells allege their reliance on the representations and their later discovery that the representations were false—these allegations lead to the inference that they were ignorant of the truth);

(7) the hearer's reliance on the truth of the representation (Knoells claim they reasonably relied on the representations);

(8) the hearer's right to rely (representations were directed at persons whose approval and financial assistance are known to be requisite to the contract); and

(9) the hearer's consequent and proximate injury (the death of their son and the damages related thereto).

*Wagner v. Casteel,* 136 Ariz. 29, 31, 663 P.2d 1020, 1022 (App.1983). It is not necessary to recite "the magic language" of these elements, provided their substance is conveyed. *Hall v. Romero,* 141 Ariz. 120, 124, 685 P.2d 757, 761 (App.1984). Because Knoells adequately plead a claim for fraud against Cerkvenik, this claim must be remanded to the trial court for further proceedings.

## IV. *Negligence*

### A. *Dram Shop Liability*

 Knoells allege that Cerkvenik owed a duty to protect Timothy from the dangers of alcohol, but breached this duty by inadequately supervising his alcohol consumption and by providing him with alcoholic beverages. Knoells allege that the direct and proximate results of this breach were Timothy's intoxication, his fall and death, and the resulting damages.

This claim is nothing more than a rewording of Knoells' dram shop claim; therefore our resolution of the dram shop claim applies here.

### B. *Unsafe Facilities*

 Knoells allege that Cerkvenik had a duty to provide Timothy [7] with adequate supervision and safe lodging facilities. Knoells argue that Cerkvenik breached this duty by providing Timothy with a hotel room that had a balcony with an unsafe railing—a railing which failed to prevent him from falling to his death. The trial court granted Cerkvenik's motion to dismiss this issue because it perceived this claim was based on the allegations that Cerkvenik supplied alcohol to Timothy; therefore, the trial court erroneously concluded, this claim was barred by A.R.S. section 4–301. Here, Knoells plead a claim for negligence absent any mention of Timothy's alcohol consumption; therefore this claim must be remanded for the trial court's reconsideration.

## V. *Outrage*

### A. *Arizona Does not Recognize a Cause of Action for Outrage*

 To the extent that Count IV of the amended complaint alleges a claim for "outrage," the trial court properly dismissed this count because no such cause of action is recognized in Arizona.[8]

---

7. Cerkvenik argues that these allegations must fail because they do not allege a duty owed by Cerkvenik to Knoells. As Knoells correctly note in their reply brief, in a wrongful death action based on negligence, the duty breached is one owed to the decedent, and the survivors' claim against the negligent party need not allege a separate, independent duty owed to the survivors. *Fedie v. Travelodge Int'l, Inc.,* 162 Ariz. 263, 265, 782 P.2d 739, 741 (App.1989).

8. In their reply, Knoells' contend that their "outrage" claim is synonymous with a claim for intentional infliction of emotional distress. *See Lucchesi v. Frederic N. Stimmell, M.D., Ltd.,* 149 Ariz. 85, 716 P.2d 1022 (App.1985). They no longer assert "outrage." They assert that Cerkvenik's outrageous conduct constitutes intentional infliction of emotional distress.

**404**

### B. *Intentional Infliction of Emotional Distress*

In the alternative, Knoells contend that Count IV of the amended complaint states a claim for intentional infliction of emotional distress; however the allegations of their amended complaint do not support such a claim. The following elements must be present to establish a claim for intentional infliction of emotional distress:

(1) [t]he defendant's conduct must be capable of being characterized as "extreme and outrageous;"

(2) the defendant must either intend to cause emotional distress or recklessly disregard near certainty that such distress will result from his conduct; and

(3) severe emotional distress must indeed occur as result of defendant's conduct.

Restatement (Second) of Torts § 46; *Watts v. Golden Age Nursing Home,* 127 Ariz. 255, 258, 619 P.2d 1032, 1035 (1980). It is the duty of the court to determine whether the acts complained of can be considered the type of extreme and outrageous conduct needed to state a claim for relief. *Davis v. First National Bank of Arizona,* 124 Ariz. 458, 462, 605 P.2d 37, 41 (App.1979). The conduct must "go beyond all bounds of decency, and be regarded as atrocious and utterly intolerable in civilized community." Restatement (Second) of Torts § 46 cmt. d; *Patton v. First Federal Sav. and Loan Ass'n of Phoenix,* 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978).

Here, the conduct at issue is Cerkvenik's alleged misrepresentations to Knoells about the amount of supervision on the trip, and its concealment of the alcohol abuse which tended to occur on the trips.[9] Arizona case law makes clear that much more egregious conduct is needed to support such a claim. *See, e.g., Patton,* 118 Ariz. 473, 578 P.2d 152 (beneficiary's attempt to force trustor into default did not constitute intentional infliction of emotional distress); *Midas Muffler Shop v. Ellison,* 133 Ariz. 194, 650 P.2d 496 (App.1982) (collection agency's phone calls to debtor and use of abusive

language did not constitute outrageous conduct needed to establish such a claim); *Cluff v. Farmers Insurance Exchange,* 10 Ariz. App. 560, 460 P.2d 666 (App.1969) (insurance adjustor's threatening phone calls cajoling plaintiff to settle did not constitute type of behavior needed to support emotional distress claim). Because the misrepresentations alleged do not constitute the type of outrageous conduct required for such a claim, Knoells have failed to state a claim for intentional infliction of emotional distress; therefore this count was properly dismissed by the trial court.

### CONCLUSION

Counts II (dram shop), part of III (negligence regarding dram shop liability), and IV (outrage) were properly dismissed by the trial court. Counts I (misrepresentation) and part of III (negligence regarding unsafe facilities) are remanded for further proceedings consistent with this decision.

GRANT, P.J., and EHRLICH, J., concur.

---

9. Knoells made it clear that the conduct at issue is Cerkvenik's conduct toward them, not any conduct toward Timothy. Accordingly, the "zone of danger" requirement which exists when the conduct is directed at a third party need not be established.