134 F.3d 378
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James A. KUHN, husband; Karen L. Kuhn, wife, Plaintiffs-Appellants,
v.
LOCKHEED AEROMED CENTER, INC., a California corporation,
Defendant-Appellee.
 No. 96-17292.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted Dec. 10, 1997.
Decided Jan. 28, 1998.
 
 Before: BRIGHT,** FLETCHER and T.G. NELSON, Circuit Judges
 MEMORANDUM*
 James Kuhn appeals the order of the district court dismissing, on summary judgment, his claims against Lockheed Aeromod Center, Inc. ("LACI") for wrongful demotion and discharge, breach of contract, and intentional infliction of emotional distress. We reverse the district court's order with respect to Kuhn's breach of contract claim, affirm in all other respects, and remand for further proceedings. Because the parties are familiar with the facts giving rise to this controversy, we will not recount them at length in explaining the reasons for our decision.
 I.
 Kuhn claims that he was demoted from his position as Project Manager--and later fired--on the basis of his age and because of his so-called "whistle-blowing" activities. With respect to Kuhn's claim of age discrimination, we assume, as did the district court, that Kuhn has made out a prima facie case by showing that he was a member of a protected class, he was removed from his position, and a younger person replaced him in the same position.[1] It thus falls to LACI to offer a nondiscriminatory explanation for its adverse employment action. See Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.1994). LACI has done so: It has asserted that Kuhn's performance was unsatisfactory as a Project Manager, and that LACI did not have enough work in its Tucson office to warrant retaining Kuhn as a Senior Planner. Both of these explanations are supported by evidence in the record. The burden now shifts to Kuhn to demonstrate that this explanation is merely a pretext. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). Kuhn has offered almost no evidence that could lead a jury to that conclusion. All of his proffers are conclusory or unsupported, with the exception of the statement of James Southwell, who stated in his deposition, in response to LACI's assertion that Kuhn did not spend enough time with the aircraft during the Alaska Airlines project, that Kuhn "spent a great deal of time on the aircraft." Plaintiff's Excerpts of Record, Vol. 1, Ex. 23, at 69-70. This is not sufficient to raise a triable issue on the question of pretext in this case.[2]
 As to his whistle-blowing claim, the district court was correct in its conclusion that Kuhn has not described any activities that he has engaged in that would bring him within the ambit of the protections that Arizona affords to whistle-blowers. The activity for which Kuhn claims protection is his willingness to provide information to internal auditors following the Alaska Airlines project, and his agreement with Alaska Airlines on various accounting issues that were adverse to Lockheed's interests. Arizona, however, reserves whistle-blower protections to "[employee] actions which enhance the enforcement of our laws or expose unsafe conditions, or otherwise serve some singularly public ... [as opposed to] private or proprietary ... purpose." Wagner v. City of Globe, 150 Ariz. 82, 89 (1986). For all that Kuhn has alleged, this was a simple audit to resolve accounting issues following a dispute as to which party to a contract should bear some unexpected costs. Kuhn cannot invoke the protections afforded to whistle-blowers merely because he came forth with information that was adverse to Lockheed's bargaining position. Compare Vermillion v. AAA Moving & Storage, 146 Ariz. 215 (App.1985) (employee afforded whistle-blower protection after notifying customer of theft by employer).
 Neither can Kuhn avail himself of Arizona's protections against infliction of emotional distress for the manner in which LACI handled his demotion and dismissal. Under Arizona law, "an essential element" of a claim for intentional infliction of emotional distress is "conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Hixon v. State Compensation Fund, 115 Ariz. 392, 393-94 (1977). Such conduct must fall "at the very extreme edge of the spectrum of possible conduct," Watts v. Golden Age Nursery Home, 127 Ariz. 255, 258 (1980), such that "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " Id.
 Kuhn claims that Lockheed's failure to follow its own internal policies in demoting and discharging him, and its decision to FAX a notice of demotion to him only after he had left for China to work for the summer on a project, rise to the level of the outrageous. Two recent Arizona employment cases have disallowed such claims in the face of much more egregious conduct. See Mintz v. Bell Atlantic Systems Leasing, 183 Ariz. 550 (App.1995) (dismissing claim of plaintiff who was hospitalized for severe emotional problems following denial of promotions at work; deprived of her disability benefits by employer; called back to work early; and then fired in a letter delivered to her hospital bed); Nelson v. Phoenix Resort Corp., 181 Ariz. 188 (App.1994) (dismissing claim of employee who was escorted out of premises in middle of night by armed security team; allowed to use bathroom on way out only if accompanied into stall by armed escorts; fired in lobby in front of coworkers and media; and prohibited from clearing personal effects out of office). While it was, perhaps, insensitive of Lockheed to wait to demote Kuhn until after he had set off for China on company business, we conclude that the average citizen of Arizona would not find Lockheed's conduct outrageous.
 II.
 On his claim for breach of contract, however, we conclude that Kuhn has offered sufficient evidence to survive summary judgment. While LACI correctly points out that Kuhn's employment appears on its face to have been at-will, Arizona law requires that a court look to "the totality of [the parties'] statements and actions regarding the employment relationship" in determining whether the parties have modified such an arrangement. Wagner, 150 Ariz. at 85-86. "[P]ersonnel manuals, guides, or rules" are "[o]ne widely accepted means of modifying the at-will contract." Id. In order to establish a breach of contract claim based upon a violation of personnel rules, an at-will plaintiff must prove: (1) "the personnel manual actually became part of the employment contract;" and (2) "the terms of the manual were breached." Id.
 In support of his breach of contract claim, Kuhn has pointed to the Standard Practice Instructions, or SPIs, which, he claims, establish certain procedures for the protection of employees, procedures that LACI must follow before taking adverse employment actions. Kuhn has offered sufficient evidence to allow him to survive summary judgment on the question of whether LACI violated the SPIs, the second requirement enumerated by Wagner. Lockheed's Human Resources Director admitted in an interrogatory that its failure to give Kuhn a reprimand or warning before demoting him was a "violation of the Company's Standard Practice Instruction." District Court Record 53 ("List of Exhibits Re: Motion to Compel Discovery"), Exh. 23, Interrogatories 17-18. While not dispositive of the question, this admission suffices to raise a genuine issue of material fact.
 Concerning Wagner's first requirement--that the SPIs "became part of the employment contract," Wagner, 150 Ariz. at 86--Kuhn points first to the statement of purpose that begins the SPIs, which explains that the Instructions "are binding upon all concerned" and apply to the conduct of "inter-organizational relationships." Plaintiff's Excerpts of Record 3, SPI 1.1. He then offers evidence to support the contention that LACI reviews the SPIs with its employees and refers to them in managing its employee relations. See District Court Record 77 at pp 2 (Deposition of Terry York), 35 (Statement of Kellye McVay). Arizona courts have recognized that the course of conduct of an employer is relevant to determining whether a rule or procedure has actually become a term of an employment relationship. See Wagner, 150 Ariz. at 86-87 (permitting at-will employee to survive summary judgment where personnel rule provides that employee may be fired only by "appointing power" and course of conduct of employer suggests that rule was regularly followed). It is not clear to us at this stage whether the SPIs necessarily govern the relationship between a manager such as Kuhn and his immediate superiors. LACI has not made any convincing showing to the contrary, however, and the SPIs do state clearly that they are "binding upon all concerned."
 In reviewing a summary judgment order, we are required to read the record in the light most favorable to the non-moving party. See Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). While the question is a close one, we conclude that Kuhn has satisfied his burden and raised a triable issue of fact on the question of whether the procedures spelled out in the SPIs constitute protections that have become a part of his employment relationship with LACI.
 For these reasons, we REVERSE the district court's summary judgment order on Kuhn's claim for breach of contract, AFFIRM the district court in all other respects, and REMAND for further proceedings. Each party shall bear its own costs.
 REVERSED, in part, AFFIRMED, in part, and REMANDED.
 
 
 
 **
 Honorable Myron H. Bright, Senior United States Court Judge for the Eighth Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 There is some dispute between the parties as to whether the position that Kuhn's replacement entered was actually "the same." Because of our disposition of Kuhn's claims, however, we need not resolve that issue here
 
 
 [2]
 Kuhn also claims that the district court abused its discretion in refusing to allow him to amend his complaint at the eleventh hour and thereby to rehabilitate his state discrimination claim. That argument has no merit. See ACRI v. International Ass'n of Machinists, 781 F.2d 1393, 1398 (9th Cir.1986)