IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

VICTOR SANCHEZ-RAVUELTA AND JANETTE DODGE, A MARRIED COUPLE,
ON BEHALF OF THEMSELVES AND THEIR MINOR CHILDREN,
ELIJAH SANCHEZ AND AMELIA SANCHEZ,
*Plaintiffs/Appellants,*

*v.*

YAVAPAI COUNTY, TOWN OF DEWEY-HUMBOLDT, AND STATE OF ARIZONA,
*Defendants/Appellees.*

VICTOR SANCHEZ-RAVUELTA AND JANETTE DODGE, A MARRIED COUPLE,
ON BEHALF OF THEIR MINOR CHILDREN,
ELIJAH SANCHEZ AND AMELIA SANCHEZ,
*Cross-Appellees,*

*v.*

TOWN OF DEWEY-HUMBOLDT,
*Cross-Appellant.*

No. CV-24-0093-PR
**Filed May 19, 2025**

Appeal from the Superior Court in Maricopa County
The Honorable Melissa Iyer Julian, Judge
No. CV2022051670
**AFFIRMED**

Opinion of the Court of Appeals,
Division Two
257 Ariz. 308 (App. 2024)
**AFFIRMED IN PART, VACATED IN PART,
DEPUBLISHED IN PART, AND REMANDED**

COUNSEL:

William H. Doyle, Brandon D. Millam (argued), Emily S. Morgan, Doyle Hernandez Millam, Phoenix, Attorneys for Town of Dewey-Humboldt

Kristin K. Mayes, Arizona Attorney General, Claudia Acosta Collings, Assistant Attorney General, Arizona Attorney General's Office, Tucson; Rebecca A. Banes (argued), Assistant Attorney General, Daniel P. Schaack, Assistant Attorney General, Arizona Attorney General's Office, Phoenix, Attorneys for State of Arizona

David L. Abney (argued), Ahwatukee Legal Office, P.C., Phoenix; Steven H. Pincus, Amara Edblad, Ryan Lamb, Pincus Law Firm, PLC, Phoenix, Attorneys for Victor Sanchez-Ravuelta, et al.

———————

JUSTICE KING authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ and JUSTICES BOLICK, BEENE, MONTGOMERY, and PELANDER (RETIRED) joined.[*]

JUSTICE KING, Opinion of the Court:

¶1        In this case, we consider whether the State of Arizona, through the Arizona Department of Liquor Licenses and Control ("Department"), owes plaintiffs injured in a motor vehicle collision a statute-based duty of care to take reasonable measures to prevent a bar with a liquor license from overserving its customers, thereby creating hazardous conditions.  We hold that the liquor statutes upon which plaintiffs rely do not create a legal duty for the Department in this case.

———————

[*] Justice Maria Elena Cruz is recused from this matter.  Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (Ret.) of the Arizona Supreme Court was designated to sit in this matter.

¶2          We are also presented with two jurisdictional questions.  On the first, we conclude that the court of appeals has appellate jurisdiction over a cross-appeal filed in this case, as the notice of cross-appeal was timely filed under Arizona Rule of Civil Appellate Procedure ("ARCAP") 9(b).  We remand to the court of appeals to consider that cross-appeal.  On the second, we conclude that the superior court had jurisdiction to rule on a motion for new trial after a notice of appeal was filed, as the court of appeals was notified of the pending motion under ARCAP 9(e)(2).

## BACKGROUND

### A.      Factual Background

¶3          In April 2021, David Browne visited Billy Jack's Saloon and Grill ("Billy Jack's") in the Town of Dewey-Humboldt in Yavapai County.  After leaving the parking lot of Billy Jack's, Browne drove his vehicle onto State Route 69 and was involved in a multi-vehicle collision.  Victor Sanchez-Ravuelta and Janette Dodge ("Adult Plaintiffs") and their two minor children, Elijah and Amelia ("Minor Plaintiffs") (collectively "Plaintiffs"), were passengers in one of the vehicles.  Plaintiffs allege that Browne's blood alcohol content was more than 0.30 percent, nearly four times the legal limit, at the time of the collision.

### B.      Superior Court Proceedings

¶4          Plaintiffs filed this action against the State of Arizona ("State"), Town of Dewey-Humbolt ("Town"), and Yavapai County ("County").

¶5          As relevant here, Plaintiffs' complaint alleges that the State, through the Department, was negligent, grossly negligent, and exhibited wanton conduct; they also assert a claim for negligent infliction of emotional distress.  Plaintiffs claim that the Department has a duty to protect the public by taking reasonable measures to prevent establishments that regularly overserve their patrons from creating hazardous conditions.  Plaintiffs contend that the Department breached this duty by: (1) "renewing the liquor license of Billy Jack's despite a history of infractions," rather than suspending or revoking the license; (2) "ignoring various marketing signs and indicators that advertised Billy Jack's tendency to over-serve its patrons and create hazardous

3

conditions;" and (3) "failing to investigate [Billy Jack's] in response to incidents and complaints suggesting Billy Jack's has a regular and frequent tendency to over-serve its patrons and create hazardous conditions to the public."

¶6　　　This case thereafter developed a complex procedural history with multiple filings and several judgments.　We set forth this history because of its relevance to the issues before us.

¶7　　　The State and County both moved to dismiss the complaint under Arizona Rule of Civil Procedure ("Rule") 12(b)(6).　The Town filed an answer to the complaint and a motion for judgment on the pleadings under Rule 12(c).　The Town later joined the County's motion to dismiss.

¶8　　　Thereafter, the Minor Plaintiffs filed a notice voluntarily dismissing their claims against the State and County without prejudice under Rule 41(a)(1).　*See* Ariz. R. Civ. P. 41(a)(1)(A)(i) (allowing the plaintiff to dismiss an action by filing a notice of dismissal before the opposing party serves an answer or a motion for summary judgment).　As the Town had filed an answer, the Minor Plaintiffs moved to dismiss their claims against the Town without prejudice under Rule 41(a)(2).　*See* Ariz. R. Civ. P. 41(a)(2) (providing that, except under Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, and a dismissal under Rule 41(a)(2) is without prejudice unless the order states otherwise).

¶9　　　The superior court then granted the State's motion to dismiss, the County's motion to dismiss, and the Town's motion for judgment on the pleadings.　The court granted these motions as to all Plaintiffs' claims.　The court determined that Plaintiffs' notice of claim to the County and Town did not contain sufficient facts to permit those entities to understand the claimed basis for liability against them.　The court found that the notice of claim to the State failed to assert facts sufficient to allow the State to investigate certain claims, but it contained sufficient facts about the Department's duty to prevent Billy Jack's from creating hazardous conditions.　Nevertheless, the court concluded that the Department "had no legal duty arising from its issuance of a liquor license to protect plaintiffs from the harm caused when Browne drove drunk and caused the accident that injured them."

¶10 The Minor Plaintiffs requested reconsideration of the court's rulings pertaining to their claims. Thereafter, the court dismissed the Minor Plaintiffs' claims against the State and County without prejudice under Rule 41(a)(1). The court denied the Minor Plaintiffs' motion to dismiss their claims against the Town without prejudice under Rule 41(a)(2), finding it "moot in light of [its] ruling on the merits."

¶11 The superior court then entered judgment under Rule 54(c) dismissing all Plaintiffs' claims against the State, County, and Town with prejudice. This is the "First Judgment."

¶12 After the First Judgment, Plaintiffs filed a motion for new trial. Plaintiffs argued that the court improperly dismissed the Minor Plaintiffs' claims with prejudice in the First Judgment, citing Rule 41(a)(1) and (2). They further argued that the court erred in dismissing the Adult Plaintiffs' claims. Plaintiffs asked the court to vacate the First Judgment, ensure that the Minor Plaintiffs' dismissals are without prejudice, and reverse the dismissals of the Adult Plaintiffs' claims so that those claims proceed to a resolution on the merits.

¶13 Thereafter, the court entered judgment under Rule 54(c) dismissing (1) the Minor Plaintiffs' claims against the State and County without prejudice, and (2) all other claims in the case with prejudice, including the Minor Plaintiffs' claims against the Town. The court, however, did not address Plaintiffs' pending motion for new trial. This is the "Second Judgment."

¶14 Plaintiffs filed a notice of appeal from the First and Second Judgments, in which they stated they were appealing "despite the pending-and-never-ruled-on 'First Amended Motion for New Trial' filed on November 9, 2022 and despite the original-and-never-ruled-on 'Motion for New Trial' filed on October 31, 2022."[1]

---

[1] The court of appeals later deemed this notice of appeal abandoned under A.R.S. § 12-322(A) (providing that an "appeal shall be deemed abandoned" if appellant fails to pay filing fee in a timely manner).

¶15        Shortly after the notice of appeal was filed, the superior court entered an order vacating the Second Judgment and explaining that it had "inadvertently entered judgment pursuant to Rule 54(c) without realizing that an appeal-tolling motion for new trial had been filed."  The superior court explained that entry of judgment would be stayed pending its ruling on the motion for new trial.

¶16        About a month later, the superior court granted Plaintiffs' motion for new trial in part and denied it in part.  The court issued a judgment of dismissal and order that dismissed (1) the Minor Plaintiffs' claims against the State, County, and Town without prejudice, and (2) the Adult Plaintiffs' claims against the State, County, and Town with prejudice.  The court's judgment of dismissal and order stated: "As to the claims asserted by [the Adult Plaintiffs] only, which are dismissed herein with prejudice, the Court finds no just reason for delay and enters this judgment of dismissal as to those claims pursuant to Rule 54(b)."  This is the "Third Judgment."

¶17        A few days later, Plaintiffs asked the superior court to enter a new judgment using Rule 54(c) language.  Plaintiffs explained that "[b]ecause all claims, rights, and liabilities have now been adjudicated, judgment cannot be entered under Rule 54(b).  It can only be entered under Rule 54(c)."  Plaintiffs also filed a notice of appeal from the Third Judgment.

¶18        Subsequently, the superior court entered the "Fourth Judgment," which (1) dismissed the Minor Plaintiffs' claims against the State, County, and Town without prejudice, and (2) dismissed the Adult Plaintiffs' claims against the State, County, and Town with prejudice.  The Fourth Judgment stated: "no further matters remain pending and . . . the Judgment is entered under Rule 54(c)."

¶19        Immediately thereafter, Plaintiffs filed an amended notice of appeal, noting they were appealing the Third Judgment and the Fourth Judgment.  Then, the Town filed a notice of cross-appeal from the Third Judgment and the Fourth Judgment.

## C.       The Court of Appeals' Opinion

**¶20**          On appeal, the Town challenged the court of appeals' jurisdiction over Plaintiffs' appeal.  *Sanchez-Ravuelta v. Yavapai County*, 257 Ariz. 308, 312 ¶ 5 (App. 2024).  The Town argued that Plaintiffs' notice of appeal from the Second Judgment was operative, the superior court's subsequent orders were void, and Plaintiffs' appeal from the Third and Fourth Judgments was untimely.  *Id.* at 313 ¶ 7.  The court of appeals disagreed, explaining that when Plaintiffs filed their notice of appeal from the Second Judgment, the court of appeals had notice of the pending motion for new trial under ARCAP 9(e)(2), which suspends an appeal.  *Id.* ¶¶ 7–9.  Further, the superior court's failure to rule on the motion for new trial with the Second Judgment did not constitute a denial of that motion by operation of law.  *Id.* ¶ 8.

**¶21**          Although no party challenged the court of appeals' jurisdiction over the Town's cross-appeal, the court of appeals explained that it had an "independent duty to evaluate [its] jurisdiction."  *Id.* ¶ 11. In doing so, the court determined that the superior court properly certified the Third Judgment under Rule 54(b), and Plaintiffs perfected their appeal by filing a timely notice of appeal from the Third Judgment.  *Id.* ¶¶ 10–11. At that point, the superior court "lost jurisdiction, and the [Fourth Judgment] it entered was void because it was not in furtherance of the appeal."  *Id.* ¶ 11.  The court of appeals determined that the Town's notice of cross-appeal was untimely because it "was filed thirty-four days after the plaintiffs' operative notice of appeal [from the Third Judgment] and sixty-three days after the operative [Third Judgment]."  *Id.* at 314 ¶ 11 (citing ARCAP 9(b) ("[T]o cross-appeal a judgment a party must file a notice of cross-appeal under [ARCAP] 8 no later than 20 days after appellant's filing of a notice of appeal, or 30 days after entry of the judgment from which the appeal is taken, whichever is later.")).  For this reason, the court of appeals concluded that it lacked jurisdiction over the Town's cross-appeal.  *Id.*

**¶22**          The court issued a divided opinion on the issue of the Department's duty to the Adult Plaintiffs.  *Id.* at 316–19 ¶¶ 22–35.  The majority held the Department owed a statute-based duty of care to the Adult Plaintiffs, and the superior court erred in dismissing their claims. *Id.* at 317 ¶ 28, 318 ¶ 31.  The majority reasoned that the legislature designed the statutory scheme establishing the Department "to regulate

actions of a licensee that could harm the general public." *Id.* at 317 ¶ 26 (citing A.R.S. §§ 4-111 to -120). Specifically, "[t]he Department has the express statutory authority to investigate and sanction licensees for serving obviously intoxicated persons" and has "powerful regulatory tools to deter licensees from doing so: potential sanctions including fines for each violation or revocation of a liquor license." *Id.* ¶ 27 (citing A.R.S. §§ 4-112(C), -118, -210(A)(9), -210.01, -244(14)). According to the majority, this statutory scheme "expressly identified the overservice of patrons as among the risks to the general public that it sought to prevent. Conversely, those potentially harmed by an overserved patron represent the precise class of persons those statutes were designed to protect." *Id.* ¶ 28.

¶23 The judge dissenting in part determined that the Department did not owe the Adult Plaintiffs a duty, and he would have affirmed the superior court on that issue. *Id.* at 318–19 ¶¶ 33–35 (Eppich, J., concurring in part and dissenting in part). The dissent observed that "most of the statutes on which the majority relies generally describe the powers, duties, and organization of the [Department]. And to the extent it could be argued that those statutes do regulate conduct, it is not conduct relevant to the issues presented in this case." *Id.* at 318 ¶ 33 (internal citation omitted). The dissent further noted that the cited statutes do not regulate the conduct of the licensor, and the purported protected class of "those potentially harmed by the abuse of alcohol" is "indistinguishable from the general public." *Id.* at 318–19 ¶¶ 33–35.

¶24 We granted review because the issues presented are of statewide importance and are capable of repetition. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶25 "We review the dismissal of a complaint under Rule 12(b)(6) de novo." *Satamian v. Great Divide Ins. Co.*, 257 Ariz. 163, 169 ¶ 10 (2024). Dismissal is appropriate if "as a matter of law . . . plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." *CVS Pharmacy, Inc. v. Bostwick*, 251 Ariz. 511, 515–16 ¶ 10 (2021) (alteration in original) (quoting *Fid. Sec. Life Ins. Co. v. Ariz. Dep't of Ins.*, 191 Ariz. 222, 224 ¶ 4 (1998)).

**¶26**     Moreover, a question of appellate jurisdiction is an issue of law that is subject to de novo review. *Francisco F. v. Ariz. Dep't of Econ. Sec.*, 228 Ariz. 379, 381 ¶ 6 (App. 2011). We also review the interpretation of court rules de novo. *Wilson v. Higgins*, 251 Ariz. 282, 284 ¶ 7 (2021).

## A.     Did The Court Of Appeals Erroneously Dismiss The Town's Cross-Appeal?

**¶27**     We first consider whether the court of appeals erred in dismissing the Town's cross-appeal on the basis that the notice of cross-appeal was untimely filed and thus deprived the court of appeals of jurisdiction.

**¶28**     ARCAP 9(b) provides that "to cross-appeal a judgment a party must file a notice of cross-appeal under [ARCAP] 8 no later than 20 days after appellant's filing of a notice of appeal, or 30 days after entry of the judgment from which the appeal is taken, whichever is later." A party's failure to timely file a notice of cross-appeal deprives the court of appeals of jurisdiction over that cross-appeal. *See In re Marriage of Gray*, 144 Ariz. 89, 90 (1985) ("[T]he timely filing of a notice of appeal is a jurisdictional prerequisite to appellate review."); *In re Marriage of Thorn*, 235 Ariz. 216, 218 ¶ 5 (App. 2014) ("[T]his court only acquires jurisdiction over those matters identified in a timely filed notice of appeal."); ARCAP 8(d) ("Failure of an appellant or cross-appellant to perform an act other than the timely filing a notice of appeal or cross-appeal does not affect the appellate court's jurisdiction . . . .").

**¶29**     Whether the Town's notice of cross-appeal was timely filed under ARCAP 9(b) turns on whether the operative judgment is the Third Judgment or the Fourth Judgment. If the Third Judgment is the operative judgment, the Town's notice of cross-appeal was untimely under ARCAP 9(b), as the court of appeals found. But if the Fourth Judgment is the operative judgment, the Town's notice of cross-appeal was timely under ARCAP 9(b). Thus, we now consider whether the Third or Fourth Judgment is operative.

**¶30**     Arizona Revised Statute § 12-2101(A) sets forth the instances when "[a]n appeal may be taken to the court of appeals from the superior court." Section 12-2101(A)(1) permits an appeal "[f]rom a final judgment

entered in an action or special proceeding commenced in a superior court."

**¶31**        The Arizona Rules of Civil Procedure establish two types of final judgments. *See Brumett v. MGA Home Healthcare, L.L.C.*, 240 Ariz. 420, 425 ¶ 1 (App. 2016). The first is under Rule 54(b): "[T]he court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines there is no just reason for delay and recites that the judgment is entered under Rule 54(b)." The second is under Rule 54(c): "A judgment as to all claims and parties is not final unless the judgment recites that no further matters remain pending and that the judgment is entered under Rule 54(c)." If a party seeks to appeal a final judgment, it is only appealable as a "final judgment" under § 12-2101(A)(1) if the superior court complied with Rule 54(b) or 54(c). *Brumett*, 240 Ariz. at 428 ¶ 12.

**¶32**        Here, the court of appeals determined that the superior court properly certified the Third Judgment under Rule 54(b). *Sanchez-Ravuelta*, 257 Ariz. at 313 ¶ 10. In doing so, the court relied on two cases addressing final judgments in the context of voluntary dismissals without prejudice. *Id.* (citing *Grand v. Nacchio*, 214 Ariz. 9, 15 ¶ 12 (App. 2006) ("Generally, an order granting a voluntary dismissal of an action without prejudice to its being refiled is not an appealable, final judgment."); *Osuna v. Wal-Mart Stores, Inc.*, 214 Ariz. 286, 290 ¶ 9 (App. 2007) (to same effect)). As discussed, the Third Judgment, among other things, ordered the dismissal of the Minor Plaintiffs' claims against the State, County, and Town without prejudice.

**¶33**        *Grand* considered whether the plaintiff could obtain appellate review of an adverse partial summary judgment by dismissing its remaining unadjudicated claims without prejudice. 214 Ariz. at 14–15 ¶¶ 10–11, 13. Noting that the parties had agreed to toll the statute of limitations on the remaining unadjudicated claims, the court concluded that the "dismissal of claims not yet adjudicated with the intent to refile the claims later does not constitute a final order appealable under § 12-2101." *Id.* at 16 ¶ 16. Thus, appellate jurisdiction did not vest. *Id.*

**¶34**        In *Osuna*, after the superior court denied plaintiff's motion for leave to amend her complaint and motion for class certification, she

voluntarily dismissed her sole remaining claim for unjust enrichment without prejudice. 214 Ariz. at 288–90 ¶¶ 4–11. As the court of appeals observed, plaintiff "appeals from the trial court's denial of leave to amend the same complaint she later dismissed." *Id.* at 290–91 ¶ 13. The court of appeals held that it lacked jurisdiction over the appeal "[b]ecause the court's grant of [plaintiff's] motion to dismiss her sole remaining claim is not appealable under § 12-2101(B)." *Id.* at 290 ¶ 11.

**¶35** In *Grand* and *Osuna*, after adverse rulings, the plaintiffs sought voluntary dismissal without prejudice of the remaining unadjudicated claims. *See Grand*, 214 Ariz. at 14–15 ¶¶ 10–11; *Osuna*, 214 Ariz. at 288–90 ¶¶ 4–11. The courts there expressed concern about a party attempting to improperly manipulate the procedural posture of the case to obtain appellate jurisdiction and make an end-run around the final judgment rule. *See Grand*, 214 Ariz. at 15–16 ¶¶ 12–16; *Osuna*, 214 Ariz. at 289–90 ¶¶ 8–11. Indeed, § 12-2101 codifies the public policy against deciding cases piecemeal, and "[p]ermitting a party to pursue an interlocutory appeal by dismissing its remaining claims without prejudice would contravene that policy." *Grand*, 214 Ariz. at 16 ¶ 16.

**¶36** The concerns expressed in *Grand* and *Osuna* are not present here. In this case, the Minor Plaintiffs sought dismissal of their claims without prejudice *before* the superior court rendered its decisions on the defendants' motions to dismiss and motion for judgment on the pleadings. And it is a defendant, not a plaintiff, that seeks appellate review of the dismissal of claims without prejudice. There is no indication that the Minor Plaintiffs, in seeking dismissal of their claims without prejudice, were attempting to manipulate appellate jurisdiction here.

**¶37** Further, the superior court's Rule 54 recital in the Third Judgment was limited to the Adult Plaintiffs' claims only: "As to the claims asserted by [the Adult Plaintiffs] only, which are dismissed herein with prejudice, the Court finds no just reason for delay and enters this judgment of dismissal as to those claims pursuant to Rule 54(b)." The Third Judgment was not a final judgment as to the Minor Plaintiffs' claims under Rule 54, which foreclosed the Town's ability to cross-appeal the superior court's ruling dismissing the Minor Plaintiffs' claims without prejudice. The superior court certified the Fourth Judgment under Rule 54(c), and its recital included all the superior court's rulings and expressed

that "no further matters remain pending and that the Judgment is entered under Rule 54(c)." It was not until the Fourth Judgment that the Town could challenge on appeal the superior court's rulings as to the Minor Plaintiffs.

¶38　　　Both the Town and Plaintiffs contend that the Third Judgment should have been certified under Rule 54(c). We agree. At the time of the Third Judgment, "no further matters remain[ed] pending" in the case. *See* Ariz. R. Civ. P. 54(c). Although the Minor Plaintiffs' claims against the State, County, and Town were dismissed without prejudice, all pending matters in the action were resolved at the time of the Third Judgment. And in fact, once the issue was brought to the attention of the superior court, it certified the Fourth Judgment under Rule 54(c). *See Schoenfeld v. Babbitt*, 168 F.3d 1257, 1265–66 (11th Cir. 1999) (explaining that plaintiff dismissed the claim against a defendant "without prejudice before the district court entered the order granting summary judgment and entered a final judgment," and thus the "order granting summary judgment adjudicated all the claims against all the remaining parties in the action at the time it was entered").

¶39　　　Under the circumstances before us, the Fourth Judgment under Rule 54(c) was the properly certified and operative judgment. Therefore, the Town's notice of cross-appeal was timely under ARCAP 9(b), and the court of appeals has jurisdiction over that cross-appeal. *See* ARCAP 1(c) ("These Rules should be used and interpreted by the courts and the parties to achieve the just, speedy, and inexpensive resolution of appeals.").

## B.　Did The Superior Court Have Jurisdiction To Rule On Plaintiffs' Motion For New Trial?

¶40　　　We now address whether the superior court had jurisdiction to rule on Plaintiffs' motion for new trial. As relevant here, the following sequence of events occurred in the superior court: (1) Plaintiffs timely filed a motion for new trial; (2) the court entered the Second Judgment without ruling on that pending motion; (3) Plaintiffs filed a notice of appeal from the First and Second Judgments; (4) the court vacated the Second Judgment; and (5) the court ruled on the motion for new trial.

¶41        The Town claims that Plaintiffs' notice of appeal from the First and Second Judgments transferred jurisdiction to the court of appeals, thus divesting the superior court of jurisdiction to rule on Plaintiffs' motion for new trial (making that order void).  This issue requires us to consider whether Plaintiffs complied with ARCAP 9(e)(2), which provides:

> [I]f a notice of appeal is filed during the pendency of [a motion for new trial], the appellant must notify the appellate court of the pending motion . . . when the appellate court assigns a case number under [ARCAP] 12(a).  Upon the appellate court's receipt of such notice, the appeal will be suspended until the last such motion is decided.

¶42        As applied here, if Plaintiffs complied with ARCAP 9(e)(2), appellate jurisdiction was suspended, and the superior court had jurisdiction to rule on Plaintiffs' motion for new trial.  But if Plaintiffs did not comply with ARCAP 9(e)(2), the court of appeals acquired jurisdiction when Plaintiffs filed their notice of appeal, and the superior court's later ruling on the motion for new trial would be void for lack of jurisdiction. *See Budreau v. Budreau*, 134 Ariz. 539, 541 (App. 1982) (holding that a notice of appeal "divested the trial court of jurisdiction to consider" a motion).

¶43        Plaintiffs' notice of appeal from the First and Second Judgments explicitly mentioned their pending motion for new trial.  The notice of appeal stated, "Plaintiffs are appealing to Division One of the Arizona Court of Appeals: (1) from the signed [Second Judgment], *despite the pending-and-never-ruled-on 'First Amended Motion for New Trial' filed on November 9, 2022 and despite the original-and-never-ruled-on 'Motion for New Trial' filed on October 31, 2022*"; and (2) "from any and all other adverse judgments, decrees, rulings, minute entries, and orders related in any way to the signed [Second Judgment], *despite the pending-and-never-ruled-on 'First Amended Motion for New Trial' filed on November 9, 2022, and despite the original-never-ruled-on 'Motion for New Trial' filed on October 31, 2022*." (Emphasis added.)

¶44        Plaintiffs notified the court of appeals of their pending motion for new trial by expressly mentioning that unresolved motion (two times) in their notice of appeal from the First and Second Judgments.  Although Plaintiffs did not provide a separate notice "when the appellate

court assign[ed] a case number under [ARCAP] 12(a)," *see* ARCAP 9(e)(2), their notice of appeal provided express notice of the pending motion in a timely manner. Upon receipt of such notice, the burden was then on the court of appeals to suspend the appeal: "Upon the appellate court's receipt of such notice, the appeal will be suspended until the last such motion is decided." ARCAP 9(e)(2).

¶45 The court of appeals below determined that the "record itself" gave notice of the pending motion for new trial under ARCAP 9(e)(2) because "those proceedings were part of the record at the time" the court of appeals received it. *Sanchez-Ravuelta*, 257 Ariz. at 313 ¶ 9. But ARCAP 9(e)(2) requires that a party affirmatively provide the appellate court notice of a pending motion. A party cannot circumvent ARCAP 9(e)(2) by simply relying on a motion being part of the record, as this would defeat the purpose of the express notice requirement.

¶46 We conclude that Plaintiffs sufficiently complied with ARCAP 9(e)(2)'s notice requirement by expressly and immediately notifying the court of appeals of the pending motion for new trial in their notice of appeal. *See, e.g.*, *Lohr v. Bolick*, 249 Ariz. 428, 431 ¶¶ 7–8 (2020) (reviewing for substantial compliance with statutory requirements). The court of appeals, having received such notice, should have suspended the appeal under ARCAP 9(e)(2). Accordingly, the superior court had jurisdiction to rule on Plaintiffs' motion for new trial. We note, however, that it is best practice for parties to file a separate notice of a pending motion with the appellate court when the appellate court assigns a case number under ARCAP 12(a). *See* ARCAP 9(e)(2).

¶47 The Town also claims that, by not addressing Plaintiffs' motion for new trial, the Second Judgment denied the motion for new trial by operation of law, which meant there was no pending motion that suspended appellate jurisdiction under ARCAP 9(e)(2). But the superior court did not intend to deny Plaintiffs' motion for new trial when it entered the Second Judgment. Indeed, the court expressed that it did not realize a motion for new trial had been filed at that time. When vacating the Second Judgment, the court explained that it "inadvertently entered judgment pursuant to Rule 54(c) without realizing that an appeal-tolling motion for new trial had been filed." And thereafter, the court granted some of Plaintiffs' requested relief in the motion for new trial.

**¶48** Contrary to the Town's assertion, this case is unlike *State v. Hill*, 174 Ariz. 313, 322 (1993), which involved a criminal defendant's allegation that the trial judge denied him due process by failing to preside in an impartial manner. In *Hill*, as part of the defendant's claim that the judge lacked impartiality, he complained that the judge failed to rule on his motion to strike the presentence report. *Id.* at 323. This Court stated that a "motion that is not ruled on is deemed denied by operation of law," but this was in the context of explaining that the defendant failed to demonstrate how the judge's failure to rule on the presentence report showed bias or prejudice. *Id. Hill* is unpersuasive here, where the superior court inadvertently failed to rule on a pending motion, and Plaintiffs' ARCAP 9(e)(2) notice suspended appellate jurisdiction until the superior court later corrected its omission and ruled on the motion for new trial. Thus, the Second Judgment did not deny Plaintiffs' motion for new trial by operation of law.

## C. Did The Department Owe A Duty Of Care To The Adult Plaintiffs?

**¶49** "To establish a defendant's liability for a negligence claim, a plaintiff must prove: (1) a duty requiring the defendant to conform to a certain standard of care; (2) breach of that standard; (3) a causal connection between the breach and the resulting injury; and (4) actual damages." *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 563–64 ¶ 7 (2018). Here, we deal with the first element—whether the Department owed a duty of care to the Adult Plaintiffs.

**¶50** "Duty is defined as an 'obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm.'" *Gipson v. Kasey*, 214 Ariz. 141, 143 ¶ 10 (2007) (quoting *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 354 (1985)). A defendant's duty to a plaintiff can be based on public policy "reflected in state and federal statutes and embodied in the common law." *Cal-Am Props. Inc. v. Edais Eng'g Inc.*, 253 Ariz. 78, 82 ¶ 14 (2022). "The primary source of duties based on public policy in Arizona is our state statutes." *Id.* "For a statute to create a duty: (1) the plaintiff must be 'within the class of persons to be protected by the statute,' and (2) the harm must be of the type 'the statute sought to protect against.'" *Id.* (quoting *Quiroz*, 243 Ariz. at 565 ¶ 15).

¶**51** A statute cannot be the basis of a public policy duty if it does not require or prohibit certain conduct. *See CVS Pharmacy, Inc.*, 251 Ariz. at 518 ¶ 25 ("Generally, a cause of action for negligence arises from a duty, a determination that a person is *required* to conform to a particular standard of conduct." (emphasis added) (quoting *Lips v. Scottsdale Healthcare Corp.*, 224 Ariz. 266, 268 ¶ 10 (2010))); *see also Gipson*, 214 Ariz. at 147 ¶ 32 ("We hold that Kasey did owe a duty of care based on Arizona's statutes *prohibiting* the distribution of prescription drugs to persons not covered by the prescription." (emphasis added)); *Stair v. Maricopa County*, 245 Ariz. 357, 362 ¶ 15 (App. 2018) ("By enacting a statute that *requires or forbids certain conduct*, the legislature articulates a public policy that may impose a duty enforceable in tort against one who violates the statute." (emphasis added)). To create a duty, therefore, a statute must regulate the defendant's conduct in a way that requires or prohibits certain conduct, such that the defendant must conform to a particular standard of conduct. Such a statute provides notice to affected parties about how they must conform their conduct to the requirements of the law.

¶**52** Title 4 of the Arizona Revised Statutes ("Alcoholic Beverages") establishes the Department, sets forth its authority and organization, outlines the liquor licensing process, and prohibits specified activities, among other things. The Adult Plaintiffs rely upon specific statutes in title 4, which they claim impose a duty of care on the Department to protect the public from establishments that regularly overserve their patrons, thereby creating hazardous conditions. We must evaluate the specific statutes upon which the Adult Plaintiffs rely.

¶**53** The Adult Plaintiffs cite §§ 4-210(A)(9), -210.01, and -118. But these statutes merely describe the Department's *discretionary* authority. *See* §§ 4-210(A)(9) ("After notice and hearing, the director *may* suspend, revoke or refuse to renew any license . . . issued pursuant to this chapter" if the licensee "fails to comply with this title . . . or any liquor law of this state" (emphasis added)), -210.01(A),(C) (providing that "[i]n lieu of or in addition to the suspension or revocation of or refusal to renew" a license, "the director *may* impose a civil penalty;" also, "the director *may* impose a requirement that the licensee or registrant or other person attend a training program approved by the department" (emphasis added)), -118 ("The director, the director's agents and any peace officer *may*, in enforcing

the provisions of this title, visit during the hours in which the premises are occupied and inspect the premises of a licensee." (emphasis added)).

**¶54** These permissive statutes make clear that the Department *may* suspend or revoke an establishment's license, *may* inspect a licensee's premises, and *may* impose civil penalties. Such discretionary statutes do not regulate the Department's conduct because they do not require the Department to perform any act or refrain from performing an act. Because a statute's regulation of conduct is necessary to establish a duty, these permissive statutes cannot serve as the basis for a public policy duty to the Adult Plaintiffs. *See, e.g.*, *CVS Pharmacy, Inc.*, 251 Ariz. at 518 ¶ 25 (holding that "the medical lien statutes do not regulate conduct, as would be necessary to establish a duty").

**¶55** The Adult Plaintiffs also cite other statutes that require the Department to act in certain instances. They rely on § 4-112(C), which provides that "[t]he director *shall* establish within the department a separate investigations unit that has as its sole responsibility the investigation of compliance with this title including the investigation of licensees alleged to have sold or distributed spirituous liquor in any form to persons under the legal drinking age." (Emphasis added.) But the mandatory conduct under § 4-112(C) is the requirement to establish a separate investigations unit. Here, there is no allegation that the Department failed to establish the necessary investigations unit or the injuries arose from such failure. Section 4-112(C), therefore, does not create a duty in this case.

**¶56** The Adult Plaintiffs also cite A.R.S. § 4-203(A), which provides that "[a] spirituous liquor license *shall* be issued only after satisfactory showing of the capability, qualifications and reliability of the applicant and . . . that the public convenience requires and that the best interest of the community will be substantially served by the issuance." (Emphasis added.) The Adult Plaintiffs, however, do not allege they were harmed because the Department improperly issued the original liquor license to Billy Jack's without the requisite "satisfactory showing" under § 4-203(A). Instead, the Adult Plaintiffs rely on circumstances after the original license was issued to Billy Jack's (i.e., allegedly overserving its patrons) to support their claim that the Department improperly failed to revoke or suspend the license. But § 4-203(A) does not address the

Department's revocation or suspension of a previously issued license. *Cf.* § 4-210(A). Therefore, § 4-203(A) does not establish a duty in this case.

**¶57** We also cannot overlook the statutes in title 4 that explicitly focus liability on licensees, licensee employees, and people who serve, sell, or furnish spirituous liquor. *See* A.R.S. §§ 4-244(14) (making it unlawful "[f]or a licensee or other person to serve, sell or furnish spirituous liquor to a disorderly or obviously intoxicated person, or for a licensee or employee of the licensee to allow a disorderly or obviously intoxicated person to come into or remain on or about the premises," with certain exceptions), -301 (providing that "[a] person other than a licensee or an employee of a licensee acting during the employee's working hours or in connection with such employment is not liable in damages to any person who is injured" when the injury "is alleged to have been caused in whole or in part by reason of the furnishing or serving of spirituous liquor to a person of the legal drinking age"), -311(A) (setting forth conditions under which a licensee is liable for personal injuries). These statutes expressly regulate the conduct of licensees in serving, selling, or furnishing spirituous liquor to patrons. They do not regulate the conduct of, or impose any penalty on, the licensor (the Department).

**¶58** The court of appeals' majority relied in part on Arizona's qualified immunity statute in concluding that the Department owed a legal duty to the Adult Plaintiffs. *See* A.R.S. § 12-820.02(A)(5) ("Unless a public employee acting within the scope of . . . employment intended to cause injury or was grossly negligent, neither a public entity nor a public employee is liable for . . . [t]he issuance of or failure to revoke or suspend any permit, license, certificate, approval, order or similar authorization for which absolute immunity is not provided pursuant to § 12-820.01."). According to the majority, the Department's ability to be sued in certain instances supports a duty here because any other finding would render § 12-820.02(A)(5) "a nullity for those persons the Department was created to protect." *Sanchez-Ravuelta*, 257 Ariz. at 318 ¶ 30. We disagree.

**¶59** Section 12-820.02(A)(5) "does not affirmatively impose a duty." *Hogue v. City of Phoenix*, 240 Ariz. 277, 282 ¶ 17 (App. 2016). It does not require or prohibit certain conduct on the part of the Department. Instead, it sets forth scenarios where a public entity and public employee are *not* subject to liability. At bottom, § 12-820.02 should be viewed as a

source of immunity, not a source of liability. *See id.* at 282 ¶ 17 (stating that the plaintiffs' arguments "flip the [duty] analysis on its head by looking at the [immunity] statute as a source of liability rather than a source of immunity"). Moreover, a determination that the Department did not owe a duty to the Adult Plaintiffs here does not render § 12-820.02(A)(5) a nullity. Our ruling in this case does not foreclose the Department's liability under other statutes and other circumstances.

**¶60** A public policy-based tort duty does not arise from the existence of an entire statutory scheme that implicitly seeks to protect the public at large from general types of harm. Instead, we look at whether a statute "requires the defendant to conform to a particular standard of conduct" and was "designed to protect the class of persons, in which the plaintiff is included, against the risk of the type of harm which has in fact occurred as a result of its violation." *Gipson*, 214 Ariz. at 143 ¶ 10, 146 ¶ 25 (first quoting *Markowitz*, 146 Ariz. at 354; and then quoting *Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 253 (1994)); *see also Cal-Am Props. Inc.*, 253 Ariz. at 82 ¶ 14. As discussed, the statutes that Adult Plaintiffs rely upon fail to satisfy these requirements.

**¶61** Moreover, by creating the Department and empowering it to investigate and punish violations of title 4, the legislature did not establish the Department as "a general insurer of safety" or make it "absolutely liable for all harms to its citizens" arising from alcohol-related incidents. *See Austin v. City of Scottsdale*, 140 Ariz. 579, 582 n.2 (1984) ("By establishing a police department, a municipality becomes neither a general insurer of safety nor absolutely liable for all harms to its citizens.").

**¶62** "In Arizona, our primary source for identifying a duty based on public policy is our state statutes." *Quiroz*, 243 Ariz. at 566 ¶ 18. And "in the absence of a statute, we exercise great restraint in declaring public policy," *id.* ¶ 19, as this "is ordinarily the prerogative of the legislative bodies," *CVS Pharmacy, Inc.*, 251 Ariz. at 517 ¶ 21. The Adult Plaintiffs have failed to cite a non-discretionary statute designed to protect a class of persons, in which they are included, against the risk of the type of harm which allegedly occurred because of the Department. *See Cal-Am Props. Inc.*, 253 Ariz. at 82 ¶ 14. Under these circumstances, the Department did not owe a legal duty to the Adult Plaintiffs.

**CONCLUSION**

¶63        We vacate paragraphs 1, 11, and 22–32 of the court of appeals' opinion, except the portions of those paragraphs affirming the superior court's dismissal of claims for failure to comply with the legal requirements of a notice of claim.  We were not asked to review the court of appeals' disposition of the notice of claim issues.  We depublish the remainder of the court of appeals' opinion, except paragraphs 12 to 21, which address the notices of claim.  We remand the case to the court of appeals to consider the Town's cross-appeal.

¶64        We affirm the superior court's dismissal of the Adult Plaintiffs' claims against the State with prejudice because the Department did not owe a duty of care to the Adult Plaintiffs.